STATE OF CONNECTICUT *v.* KENNETH WILLIAMS
(AC 25075)

Schaller, McLachlan and West, Js.

Argued November 14, 2005—officially released February 21, 2006

*Joaquina Borges King*, special public defender, for the appellant (defendant).

*Elizabeth M. Moseley*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Marc G. Ramia*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Kenneth Williams, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the second degree in violation of General Statutes § 53a-135. On appeal, the defendant claims that the trial court improperly denied (1) his motion for a mistrial, which was made on the basis of the state's late disclosure of witnesses and police reports, and (2) his motion for a judgment of acquittal that alleged insufficient evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 25, 2002, Andrew Waller was working alone as an attendant at the Hess gasoline station at 1159 Whalley Avenue in New Haven. Waller, who was working the 11 p.m. to 7 a.m. shift, was stationed in a small, enclosed kiosk, which consisted of a large glass window and sliding metal drawer in the front, and a single door in the rear.[1] At approximately 5 a.m., the defendant approached the front of the kiosk and, claiming that his car had overheated, asked Waller for assistance. Waller directed the defendant to a water faucet at the rear of the kiosk. The defendant then requested a container to hold the water, at which point Waller instructed the defendant to go to the door of the kiosk, where Waller would give him a water jug.

As Waller unlocked the door, the defendant and another man began to force their way inside the kiosk. Despite Waller's attempts to keep the door shut, the men eventually gained entry. The defendant was the first to enter and proceeded directly to the front of the kiosk where he removed "less than $100" from the cash drawer. Meanwhile, the other man, later identified as Donald Payne, physically struggled with Waller.

After emptying the cash drawer, the defendant walked toward the door. That required him to move between Payne and Waller. As the defendant maneuvered through that narrow space, he grabbed Waller and began to grapple with him. Payne then moved to the front of the kiosk and removed two cases of Newport cigarettes.

Thereafter, the defendant and Payne exited the kiosk, and Payne placed the cigarettes into a vehicle. Prior to leaving, the defendant turned to Waller and, while

---

[1] Only Hess employees are permitted inside the kiosk, and the rear door is kept locked at all times.

gesturing to his waist,[2] instructed Waller not to call the police. As the two men fled the scene, Waller observed their vehicle, which was a gray-silver four door car, and recorded its license plate number. He then immediately called 911.

On the basis of the information provided by Waller, the police were able to trace the car to its owner, Larry Nelson. Nelson informed the police that he and several other individuals had spent the evening of June 24, 2002, at the defendant's residence[3] and that during that evening, the defendant had asked to borrow Nelson's car. Nelson permitted the defendant to borrow the car, and the defendant left the residence for approximately fifteen minutes. When the defendant returned, Nelson observed him remove Newport cigarettes from the backseat of the automobile.

On June 17, 2002, the defendant was arrested and charged with robbery in the second degree in violation of § 53a-135 (a) (1). At trial, the state introduced into evidence a video surveillance tape of the crime, as well as the testimony of Waller and several police witnesses. On September 15, 2003, the defendant was convicted on the robbery charge and pleaded guilty to being a persistent serious felony offender pursuant to General Statutes § 53a-40 (c). The court rendered judgment in accordance with the verdict, and on November 26, 2003, sentenced the defendant to a term of ten years incarceration. This appeal followed.

I

The defendant first claims that the court improperly denied his motion for a mistrial. Specifically, the defendant argues that he was prejudiced by the state's late

[2] Waller interpreted that gesture as a suggestion by the defendant that he was armed.

[3] The defendant's residence is at 11 Victory Drive in New Haven and is an estimated three to five minute drive from the Hess station.

disclosure of exculpatory material. He asserts that his trial counsel was unable to prepare an adequate defense and that the late disclosure affected his trial strategy. We disagree.

The following additional facts are necessary for the resolution of the defendant's claim. On the first day of trial, defense counsel notified the court that the state had failed to disclose in a timely manner certain police reports[4] as well as a formal witness list. In response, the court held a conference prior to the start of evidence. At that conference, the state provided the court with the police reports as well as a copy of a witness list, which included the names of three police officers who were added after the conclusion of jury selection. The court reviewed the documents and, thereafter, delayed the start of evidence by one to two hours to allow defense counsel the opportunity to review the reports and the witness list. After reviewing the documents, the defendant moved for a mistrial, arguing that the disclosure was not made "at a time sufficiently prior to trial to enable counsel to research and investigate."

The court, however, disagreed and found that the defendant had failed to demonstrate that the state's late disclosure created any prejudice.[5] The court reasoned that because it had presided over the earlier trial of

[4] The defendant argues that the various police reports constituted exculpatory evidence in that they contained (1) a fingerprint analysis that indicated that his fingerprints were not found in Nelson's car and (2) a summary of Waller's statements that included his inability to identify the defendant in photoboards.

[5] Specifically, the court stated: "I don't think you've satisfied me . . . that the nondisclosure or failure to comply with the disclosure requested . . . has created any prejudice. I have not heard you comment to the court that, having reviewed the five reports that were handed over to you today, there's a need for any delay of the trial because of the noncompliance. I also have not heard you make any requests other than for a mistrial with regard to the introduction of any of the evidence contained in those reports. I did not see in my review of those reports that there's anything by way of surprise or anything that would require any delay in going forward today."

Payne, it was familiar with the facts of the robbery and did not think that the reports contained anything that would cause surprise or require a delay of the trial. The court explained that "the reason I gave you one hour to review those documents is because I concluded, having reviewed them myself, that you didn't need more than an hour, and because they are not voluminous documents and I haven't . . . heard you remark to the court that [the defendant] has been substantially prejudiced by the late disclosure."[6] Accordingly, the court denied the defendant's motion for a mistrial.

"While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. . . . The decision whether to grant a mistrial is within the sound discretion of the trial court. . . . Put another way, [o]n appeal, the defendant bears the burden of establishing that there was irreparable prejudice to the defendant's case such that it denied him a fair trial." (Citations

[6] With respect to the late disclosure of a formal witness list, the court's concern focused on the fact that three police officers were added to the state's witness list after the conclusion of jury selection. Accordingly, the court, prior to the start of evidence, inquired of the jurors whether any of them knew the three additional witnesses. None of the jurors knew the additional witnesses.

omitted; internal quotation marks omitted.) *State* v. *Coltherst*, 87 Conn. App. 93, 99, 864 A.2d 869, cert. denied, 273 Conn. 919, 871 A.2d 371 (2005).

In essence, the defendant claims on appeal that the state's late disclosure of exculpatory material prevented him from adequately researching, investigating and preparing a defense. "In [*Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)], the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, the defendant must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the defendant, and (3) it was material [either to guilt or to punishment]. . . .

"It is well established that [e]vidence known to the defendant or his counsel, or that is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady*. . . . Furthermore, we have stated: *Brady* does not mandate pretrial disclosure in all cases. . . . Where there has been an initial disclosure of exculpatory evidence at trial, the appropriate standard to be applied is whether the disclosure came so late as to prevent the defendant from receiving a fair trial. . . . The defendant bears the burden of proving that he was prejudiced by the failure of the state to make the disclosure earlier." (Citations omitted; internal quotation marks omitted.) *State* v. *Thompson*, 81 Conn. App. 264, 277–78, 839 A.2d 622, cert. denied, 268 Conn. 915, 847 A.2d 312 (2004).

In the present case, the police reports and the witness list were disclosed prior to the start of evidence. It is clear, therefore, that the documents were not suppressed, as the term is used in *Brady*. Consequently,

the question becomes whether the disclosure came so late that it prevented the defendant from receiving a fair trial. Here, in an effort to ensure a fair trial, the court provided defense counsel one to two hours to review the limited materials and adequately addressed the late disclosure of the witness list by inquiring of the jurors whether any of them knew the three additional witnesses. "There is no denial of due process if the disclosed material can be utilized effectively at trial, and the defendant bears the burden of proving that he was prejudiced by the late disclosure." Id., 279. In support of his claim, the defendant argues that he "would have utilized" the substance of the police reports in cross-examining certain witnesses if the reports had been disclosed earlier. That argument ignores the reality that defense counsel made no use of the disclosed information at trial, despite having reviewed it, and that defense counsel did not request a continuance to allow for further review. See *State* v. *Sinchak*, 47 Conn. App. 134, 142, 703 A.2d 790 (1997) ("if the defendant wanted to use the statements to impeach the state's witnesses, he could have moved to recall the witnesses or requested a continuance to conduct further investigation and preparation"), appeal dismissed, 247 Conn. 440, 721 A.2d 1193 (1999).

In sum, while we do not approve of the state's late disclosure, we cannot conclude that the defendant "was prejudiced by the failure of the state to make the disclosure earlier." (Internal quotation marks omitted.) *State* v. *Thompson*, supra, 81 Conn. App. 278. The defendant, therefore, has failed to meet his burden of proving that the state's disclosure of the police reports and witness list "came so late as to prevent the defendant from receiving a fair trial." (Internal quotation marks omitted.) Id. Accordingly, the court's denial of the motion for a mistrial was proper.

## II

The defendant next claims that the court improperly denied his motion for a judgment of acquittal. Specifically, the defendant argues that the state failed to prove beyond a reasonable doubt that he used "physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking . . . ." General Statutes § 53a-133. We disagree.

At the outset, we set forth the applicable standard of review. "In reviewing [a] sufficiency [of evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable

doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Leon-Zazueta*, 80 Conn. App. 678, 681–82, 836 A.2d 1273 (2003), cert. denied, 268 Conn. 901, 845 A.2d 405 (2004).

In support of his claim, the defendant argues that although Waller testified about having physically struggled with Payne, Waller never testified about any physical contact with the defendant. Additionally, the defendant argues that the video surveillance tape offered by the state showed close proximity between only the defendant and Waller, and did not show the defendant exerting physical force on Waller.

Our resolution of the defendant's claim requires only brief discussion. Although it is true that Waller did not testify about physical contact with the defendant, a viewing of the surveillance tape unmistakably depicts the defendant grappling with Waller during the commission of the crime. As defense counsel conceded at oral argument, if physical force is depicted on the surveillance tape, the defendant's claim must fail. Thus, viewing that evidence in the light most favorable to sustaining the jury's verdict, we conclude that the state produced sufficient evidence that the defendant used "physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking . . . ." General Statutes § 53a-133. Accordingly, we affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.