# STATE OF CONNECTICUT *v.* KENNETH MYERS
## (AC 26740)

Bishop, DiPentima and Berdon, Js.

Argued November 28, 2006—officially released May 15, 2007

*Alice Osedach,* assistant public defender, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Stephen J. Sedensky III,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Kenneth Myers, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a), possession of narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b), and possession of narcotics in violation of General Statutes § 21a-279 (a). On appeal, the defendant raises the following claims: (1) the evidence was insufficient to

sustain his conviction under § 21a-278a (b); (2) the court improperly instructed the jury as to the elements of § 21a-278a (b); (3) the court improperly convicted and sentenced him as a repeat offender; and (4) the court improperly admitted evidence of prior misconduct. We disagree with claims one, two and four and agree with claim three. Accordingly, we affirm the conviction for the violation of § 21a-277 (a) and § 21a-278a (b), but we vacate the imposed sentence and remand the matter for a hearing on the part B information and for sentencing.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our discussion of the issues on appeal. On June 18, 2004, as Susan Curtis was walking to the Super Food Mart (store) located in the North Street Shopping Plaza (plaza) in Danbury to cash a paycheck, she saw the defendant in his car and asked him for a ride. The defendant agreed and brought her to the store where she cashed her check and then returned to the defendant's vehicle.

At approximately 4:40 p.m., while Officer Isaiah Pitts of the Danbury police department was on duty in his marked police vehicle at the plaza, he noticed that the rear license plate of the defendant's vehicle was not properly secured. After checking with the department of motor vehicles and ascertaining that the license plate belonged to another vehicle, Pitts decided to follow the defendant, who had departed from the plaza onto Padanaram Road, driving southbound.[1] Once the defendant had traveled through one traffic light, Pitts activated his vehicle's lights and siren and directed the defendant to drive into the parking lot of a Texaco

---

[1] We note that there is neither a claim by the defendant nor any evidence in the record to suggest that Pitts chased or caused the defendant's vehicle to travel onto Padanaram Road in a southerly direction.

gasoline station, which was located less than 700 feet from Henry Abbott Technical School.

Before Pitts approached the vehicle, the defendant took a plastic bag out of his pocket and told Curtis to hold onto it for him. Curtis quickly put the bag in her mouth because, she claimed, she "did not know what else to do." Once Pitts arrived, he asked the defendant for his license, registration and insurance card. The defendant provided his license but stated that he had no other documentation. Returning to his vehicle, Pitts ascertained that the defendant's operator's license was suspended. Pitts then returned to the defendant's vehicle, arrested the defendant and placed him in the police vehicle.

After the defendant had been removed from his vehicle, Curtis took the bag from her mouth and placed it into her underwear. She later claimed that she had held onto the bag because she knew the defendant was a drug dealer and because she was afraid of him. Once the defendant had been placed in the police cruiser, a second officer, Ted Zalenski, arrived on the scene. Upon checking Curtis' name through their database, they discovered that she had an outstanding warrant for her arrest for failure to appear relating to a motor vehicle case in 1997. On this basis, Curtis was arrested and placed into Zalenski's vehicle.

Both the defendant and Curtis were then taken to the Danbury police department and placed in separate cells. Curtis asked to speak to Pitts and told him how she had come into possession of a bag of "stuff" in her underwear. Following this conversation, Curtis was searched and the bag was seized. Curtis thereafter gave the police a statement regarding the circumstances that caused her to be present in the defendant's vehicle and in possession of the bag and its contents. Subsequently, the bag was discovered to contain fourteen smaller

bags, eleven holding a yellow rock like substance and three containing a white powdery substance. Subsequent laboratory testing confirmed that the various bags contained two controlled substances, crack cocaine and powdered cocaine.

On the basis of the preceding facts, the defendant was charged in a four count information with possession of narcotics with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (a), possession of narcotics with intent to sell in violation of § 21a-277 (a), possession of narcotics with intent to sell within 1500 feet of a school in violation of § 21a-278a (b) and possession of narcotics in violation of § 21a-279 (a). On March 23, 2005, after a jury trial, the defendant was found not guilty on the first count and guilty on the remaining counts. On May 25, 2005, the court imposed a total effective sentence of thirty years on the defendant as a subsequent offender, suspended after thirteen years, with five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims[2] that there was insufficient evidence for the jury to find him guilty of possession of narcotics with intent to sell within 1500 feet of a school in violation of § 21a-278a (b).[3] Specifically, the

---

[2] The defendant concedes that this claim is unpreserved. We will, however, review the defendant's unpreserved sufficiency claim because "such claims implicate a defendant's federal constitutional right not to be convicted upon insufficient proof." (Internal quotation marks omitted.) *State* v. *Gordon*, 84 Conn. App. 519, 534, 854 A.2d 74, cert. denied, 271 Conn. 941, 861 A.2d 516 (2004).

[3] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in

defendant argues that the evidence was inadequate to establish that he possessed narcotics with the intent to sell them while he was within 1500 feet of Henry Abbott Technical School. We are not persuaded.

We begin by setting forth the applicable standard of review. "In reviewing [a] sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a

addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. . . ."

reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Williams*, 93 Conn. App. 844, 852–53, 890 A.2d 630 (2006).

We begin with the language of § 21a-278a (b), the applicable statute. Our Supreme Court in *State* v. *Denby*, 235 Conn. 477, 481, 668 A.2d 682 (1995), found that the meaning of § 21a-278a (b) is clear. The court stated that "[t]he first sentence [of § 21a-278a (b)] provides that if any person who is not drug-dependent violates § 21a-277 or § 21a-278 in one of the ways set forth therein, and does so within [1500] feet of a school, that person will receive an additional three year term of imprisonment. The second sentence of § 21a-278a (b) places an additional limitation on the location requirement: 'To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within [1500] feet of, the real property comprising a public or private elementary or secondary school.' This sentence further defines two of the ways previously described—that is, 'transporting or possessing a controlled substance'—by adding that they 'shall be with intent to sell or dispense in or on, or within' the [1500] foot zone. Therefore, the plain language of § 21a-278a (b) requires as an element of the offense an intent to sell or dispense the narcotics at a location that is within [1500] feet of a school." Id., 481–82.

Accordingly, to prove that the defendant was guilty of § 21a-278a (b), the state was required to prove beyond a reasonable doubt that he possessed narcotics with the intent to "sell" them and that he did so within 1500 feet of Henry Abbott Technical School. The defendant does not challenge the sufficiency of the evidence that he possessed cocaine within 1500 feet of the school.

Rather, and as noted previously, his sole argument concerning this claim is that there was insufficient evidence that he possessed the narcotics with the intent to sell them while he was within 1500 feet of Henry Abbott Technical School.

"[T]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the jury to decide." (Internal quotation marks omitted.) *State* v. *Downey*, 45 Conn. App. 148, 154, 694 A.2d 1367, cert. denied, 242 Conn. 909, 697 A.2d 367 (1997).

Furthermore, "[t]he quantity of narcotics found in the defendant's possession [is] probative of whether the defendant intended to sell the drugs. . . . Also indicative of the defendant's intent to sell narcotics is the manner in which the narcotics are packaged." (Citation omitted; internal quotation marks omitted.) *State* v. *Ogrinc*, 29 Conn. App. 694, 699, 617 A.2d 924 (1992); see also *State* v. *Kiser*, 43 Conn. App. 339, 344, 683 A.2d 1021, cert. denied, 239 Conn. 945, 686 A.2d 122 (1996) (individually wrapped packages of cocaine consistent with preparation of drugs for sale), cert. denied, 520 U.S. 1190, 117 S. Ct. 1478, 137 L. Ed. 2d 690 (1997). "In addition, the absence of drug paraphernalia indicates that the substance is not intended for personal use, but rather for sale to others." (Internal quotation marks omitted.) *State* v. *Jeffreys*, 78 Conn. App. 659, 675–76, 828 A.2d 659, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003).

In addition, we emphasize and note that "[i]n common parlance, a 'sale' is the exchange of an object for value. The statutory definition of 'sale' as applied to illegal drug transactions, however, is *much broader* and includes *any* form of delivery[4] [of an illegal drug] . . . . General Statutes § 21a-240 (50)."[5] (Emphasis added; internal quotation marks omitted.) *State* v. *Arbelo*, 37 Conn. App. 156, 159–60, 655 A.2d 263 (1995); see also *State* v. *Sargent*, 87 Conn. App. 24, 44 n.11, 864 A.2d 20 ("[t]his court has observed that the statutory definition of 'sale' as applied to illegal drug transactions is much broader than its common definition"), cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005). Moreover, "transfer" is defined as "[*a*]*ny* mode of disposing of or parting with an asset or an interest in an asset. . . . The term embraces every method—direct or indirect, absolute or conditional, voluntary or involuntary—of disposing of or parting with property or with an interest in property . . . . To convey . . . from . . . one person to another; to *pass or hand over from one to another* . . . ." (Emphasis added.) Black's Law Dictionary (7th Ed. 1999).

On the basis of our review of the record, we conclude that there was sufficient evidence to support the jury's finding that the defendant was guilty of having violated § 21a-278a (b). Here, as noted, the jury was presented with evidence that the defendant had in his possession

---

[4] General Statutes § 21a-240 (11) provides in relevant part that "delivery means the actual, constructive or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship . . . ." (Internal quotation marks omitted.)

[5] General Statutes § 21a-240 (50) provides: " 'Sale' is any form of delivery which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee . . . ."

General Statutes § 21a-240 (11) provides in relevant part that "delivery means the actual, constructive or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship . . . ." (Internal quotation marks omitted.)

a bag containing fourteen individually packaged bags that contained either crack cocaine or powdered cocaine. Testimony adduced at the trial indicated that the street value of each bag was approximately $40 to $50 and that the possession of this quantity and variety of drugs was more consistent with an intent to sell than personal use. The jury heard, as well, that there was no other drug paraphernalia found with the defendant, which would have indicated an intention to use the drugs himself. Finally, the jury heard testimony that while within 700 feet of the Henry Abbott Technical School, the defendant actually "transferred" the drugs to Curtis, which in and of itself is evidence of the defendant's intent to "sell." This evidence, if credited, amply supported the jury's conclusion that the defendant possessed narcotics with the intent to sell and that he did so within 1500 feet of a school. Thus, construing the evidence in the light most favorable to sustaining the jury's verdict, we conclude that the verdict reasonably was supported by the evidence. The defendant's insufficiency claim fails.[6]

[6] We reject the defendant's argument that his actions are not the traditional circumstances that General Statutes § 21a-278a (b) was intended to address.

"The purpose of § 21a-278a (b) is present on its face and in its legislative history. This statute was designed to protect children and schools from the danger that accompanies illegal drugs and their purveyors." *State* v. *Patrick*, 42 Conn. App. 640, 649, 681 A.2d 380 (1996). "[T]he language of § 21a-278a (b) manifests a clear legislative intent to provide an enhanced punishment for violating General Statutes §§ 21a-277 or 21a-278 within 1500 feet of a school." *State* v. *Patrick*, supra, 647. Moreover, "legislative intent to impose cumulative punishments may also be seen in the comments of legislators when enacting § 21a-278a (b). During the discussion in the General Assembly concerning the passage of Public Acts 1987, No. 87-373, Representative Eugene A. Migliaro, Jr., stated: 'There's two factors here that people have been kicking around. One is the 5 year sentence plus the additional [three] year sentence if you're within the [1500] feet [of a school]. . . . I think adding the additional [three] years just for being in the area makes a lot of sense. It could be a deterrent. I think an individual knows, and I think they're going to take a second look . . . [a]nd [if] I were the one pushing drugs, I would look at the extra [three] years and stay out of the area and I think that's the intent of the bill.' 30 H.R. Proc., Pt. 24, 1987 Sess., pp. 8727–28." *State* v. *Patrick*, supra, 647–48.

## II

The defendant next claims that the court failed to instruct the jury on an essential element of § 21a-278a (b). Specifically, the defendant argues that the court failed to instruct the jury that to be found guilty under § 21a-278a (b), he must have specifically intended to be within 1500 feet of Henry Abbott Technical School when he possessed the narcotics with the intent to sell them. We are not persuaded.

Having failed to preserve his claim, the defendant now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7] "This court has held that only under the most exceptional circumstances will it consider a claim, constitutional or otherwise, that has not been raised [in] and decided by the trial court. . . . However, [i]t is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . Consequently, the failure to instruct a jury on an element of a crime deprives a defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Citations

Finally, our Supreme court has made it clear that whether the defendant knew he was within an area prohibited by § 21a-278a (b) is irrelevant. *State* v. *Denby*, supra, 235 Conn. 481–83. All that matters is that the defendant committed acts proscribed by § 21a-278a and did so within 1500 feet of Henry Abbott Technical School. See part II.

[7] Under *Golding*, a defendant may prevail on unpreserved claims only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Griffin*, 97 Conn. App. 169, 181–82 n.6, 903 A.2d 253, cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006).

omitted; internal quotation marks omitted.) *State* v. *Knight*, 56 Conn. App. 845, 849–50, 747 A.2d 13 (2000). Accordingly, we agree with the defendant that "the jury instruction is subject to *Golding* review because the defendant raises a constitutional claim involving a fundamental right, and the record is adequate for review." *State* v. *Denby*, supra, 235 Conn. 483. We conclude, however, that the defendant's claim fails to satisfy the third prong of *Golding* because the alleged constitutional violation does not clearly exist and did not clearly deprive the defendant of a fair trial.

Our analysis begins with our standard of review. "When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Leroy*, 232 Conn. 1, 8, 653 A.2d 161 (1995). On the basis of our review of the record, we are unpersuaded that the court's instruction was flawed. Contrary to the claim of the defendant, we do not believe that culpability under § 21a-278a (b) requires proof that the defendant had the specific intent to be within 1500 feet of a school. Rather, we believe that proof of this aspect of the statute's proscriptions is adequate if the evidence demonstrates that the defendant was in fact within the protected zone when he possessed the narcotics with the intent to sell them.

"[T]he plain language of § 21a-278a (b) requires as an element of the offense an intent to sell or dispense the narcotics at a location that is within [1500] feet of a school. The state is not, however, required to prove that the defendant knew that this location was within the zone. Ordinarily, the mental state required by a statute is expressly designated: When one and only one of such terms appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears. . . . Section 21a-278a (b) specifically requires a mental state of intent, which must be applied to every element of that statute. The mental state of knowledge that the location is within the [1500] foot zone is not set forth in § 21a-278a (b). An intent element is not synonymous with a knowledge element, each of which is specifically defined in the penal code. The absence of any statutory requirement that the defendant knowingly sell within the prohibited school zone demonstrates that the legislature did not intend to make knowledge an element of the crime. If the legislature had wanted to make knowledge as to location of a school an element of the offense, it would have done so by specifically stating that the defendant possessed the narcotics with the intent to sell or dispense at a location that the defendant knew was in, or on, or within [1500] feet of a school. . . .

"Thus the plain language of § 21a-278a (b) dictates only one construction. While knowledge on the part of the defendant as to location is not an element of § 21a-278a (b), the state is required to prove that the defendant intended to sell or dispense those drugs in his or her possession at a specific location, *which location happens to be within 1500 feet of an elementary or secondary school.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Denby,* supra, 235 Conn. 482–83.

Our examination of the entire jury charge reveals that each element of § 21a-278a (b) was properly laid before the jury.[8] The charge outlined the elements of the statute, stating that the defendant had to have had possession of the narcotics with the intent to sell them and did so within the school zone. Further, the court stated that the elements were the same as those required for a verdict of guilty under § 21a-278 (b), with the addition that the defendant did this in or on or within 1500 feet of the real property comprising a public or private elementary or secondary school. This portion of the charge adequately addressed the location element, instructing the jury that a verdict of guilty under this statute required a finding that the act of possession with intent to sell or dispense had taken place within the prohibited zone. A subsequent portion of the charge reiterated the location requirement, directing the jury that the state must prove beyond a reasonable doubt

---

[8] The court instructed the jury as follows: "The defendant is charged with violating [General Statutes § 21a-278a (b)], which, as it relates to this case, provides as follows: any person who violates [General Statutes §§ 21a-277 or 21a-278] by possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on or within 1500 feet of the—of the real property comprising a public or private secondary school shall be punished.

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: that the defendant violated [§ 21a-277], that's count two, or [§ 21a-278], that's count one, by possessing with the intent to sell or dispense to another person cocaine and that (2) such act occurred in or on or within 1500 feet of the real property of a secondary school.

"A secondary school is a school for any combination of grades seven through twelve and may include any separate combination of grades five and six or grades six with grade seven and eight. If you find that the state has proven beyond a reasonable doubt that the defendant violated [§ 21a-277], that's count two, and, or [§ 21a-278], count one, and that act occurred in or on or within 1500 feet of the real property of a public or private secondary school, you shall find the defendant guilty.

"If you find that the state has failed to prove beyond a reasonable doubt [that] the defendant violated [§ 21a-277] and, or [§ 21a-278] and that the act occurred in or on or within 1500 feet of the real property of a public or private secondary school, you shall find the defendant not guilty."

all of the elements of this offense, that is, the defendant knowingly possessed cocaine with the intent to sell and did so within 1500 feet of the real property comprising a public or private elementary school.

Thus, the defendant is incorrect in his assertion that the court should have instructed the jury that the state was required to prove that he not only possessed the narcotics with the intent to sell them at a location that was within 1500 feet of the school, but that he had to have had the specific intent to be within the 1500 feet of a school at the moment he possessed drugs with an intent to sell them. *Denby* makes it clear that § 21a-278a (b) does not compel the double intent interpretation urged on us by the defendant. "We have no warrant for interpolating into a criminal statute a requirement it does not now contain. . . . Our function is not to improve legislative actions by reading into the statute what is clearly not there." (Citation omitted; internal quotation marks omitted.) *State* v. *Plude*, 30 Conn. App. 527, 540, 621 A.2d 1342, cert. denied, 225 Conn. 923, 625 A.2d 824 (1993). We therefore conclude, after reviewing the instructions as a whole, and judged by their total effect, that the court's instructions to the jury were proper.

### III

The defendant's next claim is that he was improperly convicted and sentenced as a repeat offender. Specifically, the defendant argues that the court improperly convicted and sentenced him without a guilty plea or a trial as to the part B information pursuant to Practice Book § 42-2.[9] We agree.

---

[9] Practice Book § 42-2 provides: "When an information is divided into two parts under Section 36-14, on a finding of guilty on the first part of the information, a plea *shall* be taken and, if necessary, election made on the second part and the trial thereon proceeded with. If the defendant elects a jury trial on the second part of the information, such trial may be had to the same or to another jury as the judicial authority may direct." (Emphasis added.)

The following additional facts are pertinent to this issue. On March 15, 2005, the defendant was advised by the clerk of the court that the state had also charged him in a part B information.[10] In the information, the state sought an enhanced penalty for the defendant for his violation of § 21a-277 (a) as a repeat offender should he be convicted under § 21a-277 (a) in this instance. Also, during the trial, the state noted that it intended to call Rolanda Mitchell, a probation officer, regarding the violation of probation charge. Thereafter, outside the jury's presence, the state called Mitchell, and a certified copy of the defendant's prior conviction for violating § 21a-277 (a) was admitted as an exhibit.[11] The court reserved decision on the violation of probation charge at that time.

Subsequently, on March 23, 2005, after the jury returned a verdict of guilty on the charge of violating § 21a-277 (a), the court noted that it also found the defendant in violation of his probation. Following the verdict, the state informed the court that "in the CR04-012661, there is a part B of the information" and that the state understood that trial counsel wanted to "waive a jury on that and have a court trial." Defense counsel responded that she was "waiving a jury [trial]" but was not sure that a part B information was appropriate in

[10] Practice Book § 36-14 provides: "Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecuting authority. In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. In alleging the former conviction, it is sufficient that the information allege the date when, the town or city where, and the court wherein such conviction was obtained and the crime of which the defendant was convicted, all of which may be stated in accordance with the provisions of Section 36-13."

[11] The defendant had been sentenced on February 27, 2003, to five years, suspended, with three years probation, and was on probation at the time of his arrest in June, 2004.

this matter. Defense counsel noted that while § 21a-277 (a) provides a different penalty range for a second offense, "I don't see anywhere where it requires a part B. I think that's a sentencing discretion. It's up to the judge, and it will come up in the [presentence investigation report]." The following colloquy then occurred:

"[The Prosecutor]: All right. I'm fine with that, Your Honor. The concern I have is that—it is—because it is a penalty enhancement under our recent Supreme Court cases, and I—which I don't—just don't have with me right now, it looks like that it does not require a finding by a fact finder. If counsel disagrees with that, then I'm fine with that. I guess the concern is [that] I don't want this, then, to be an issue on appeal. But as long as defense counsel was fine with it and the defendant is fine with her decision and interpretation of the law, that's fine with me.

"The Court: . . . [W]ould you want me to proceed to put this over for sentencing after a [presentence investigation report] is done?

"[Defense Counsel]: Yes, Your Honor.

"The Court: All right. When would be a good time for us to do that?"

The court then made a finding that the defendant had violated his probation. Before the proceedings for that day ended, however, another colloquy took place as follows:

"[The Prosecutor]: . . . I would also note that defense counsel is waiving a part B of the information determining that it is not necessary for the sentence of up to thirty years.

"The Court: Is that a fair statement, [counsel]?

"[Defense Counsel]: Yes, Your Honor.

"The Court: All right. . . . I'll gather all the information that's appropriate and sentence [the defendant] on May 18."

At the subsequent sentencing hearing, the state noted that both the presentence investigation report and testimony indicated that the defendant had previously been convicted of violating § 21a-277 (a), that this was the subject of the violation of probation on which the state submitted evidence, and that the defendant was therefore a second offender. On the charge of violating § 21a-277 (a), the court stated that because the defendant had a previous conviction on that charge, it was going to sentence him as a repeat offender. The court then imposed an aggregate sentence of thirty years, suspended after thirteen years, with five years probation.

The defendant concedes that his claim is unpreserved. He requests review pursuant to *Golding*[12] and on the basis of the plain error doctrine. "Under Practice Book § 60-5, this court may, in the interest of justice, notice plain error not brought to the attention of the trial court. Otherwise, the reviewing court shall not be bound to consider a claim not raised before the trial court or arising subsequent to trial." *State* v. *Peters*, 89 Conn. App. 141, 144, 872 A.2d 532, cert. denied, 274 Conn. 918, 879 A.2d 895 (2005). The plain error doctrine, which "has been codified at Practice Book § 60-5, which provides in relevant part that [t]he court may reverse or modify the decision of the trial court if it determines . . . that the decision is . . . erroneous in law. . . . The plain error doctrine is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or

[12] In view of our conclusion that the present case warrants plain error review; see Practice Book § 60-5; we do not reach the question of whether this claim provides a basis for *Golding* review.

never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Alston*, 272 Conn. 432, 455–56, 862 A.2d 817 (2005).

"We have held generally that a mandatory provision of the rules of practice . . . must be implemented fully to avoid trampling on a defendant's constitutional rights, which would constitute plain error and require, as a consequence, reversal of the judgment." *State* v. *Irala*, 68 Conn. App. 499, 515, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002). A court commits plain error when it fails to implement properly the mandatory provisions of clearly applicable rules of practice. *Cummings & Lockwood* v. *Gray*, 26 Conn. App. 293, 300, 600 A.2d 1040 (1991); *In re Jonathan P.*, 23 Conn. App. 207, 211, 579 A.2d 587 (1990). In such cases, "the plain error doctrine must be invoked . . . ." *In re Jonathan P.*, supra, 211. "Our Supreme Court previously has recognized the significance of the [drafter's] choice in electing to choose shall or may in formulating a . . . directive. . . . Absent an indication to the contrary, the [drafter's] choice of the mandatory term shall rather than the permissive term may indicates that the . . . directive is mandatory." (Citation omitted; internal quotation marks omitted.) *Vargas* v. *Doe*, 96 Conn. App. 399, 412, 900 A.2d 525, cert. denied, 280 Conn. 923, 908 A.2d 546 (2006). Finally, "[o]ur rules of practice and case law provide that where a defendant is exposed to

greater punishment according to his status as a subsequent offender, a two part information is required, along *with a full judicial proceeding* on part B of the information. See, e.g., Practice Book §§ 619 [now § 36-14] and 840 [now § 42-2] . . . ." (Citations omitted; emphasis added.) *State* v. *Foster*, 45 Conn. App. 369, 389, 696 A.2d 1003, cert. denied, 243 Conn. 904, 701 A.2d 335 (1997).

Here, the court was required by the mandate of Practice Book § 42-2 to put the defendant to plea to accord him a hearing regarding his jeopardy as a repeat offender and to make a finding regarding his status as a repeat offender. Irrespective of whether the court may have been led by the combined misstatements of counsel, the record reveals that the defendant was not put to plea, no canvass took place, no trial occurred and the defendant was not adjudicated a repeat offender. On this record, we conclude that the trial court committed plain error and that it would be an injustice for this court not to afford the defendant relief on the ground that he failed to preserve this claim. Accordingly, the defendant's sentence must be vacated, the court must afford the defendant a hearing on part B of the information, and, following that determination, the defendant must be resentenced.[13]

## IV

The defendant's final claim is that the court abused its discretion by permitting the state to introduce prior misconduct evidence concerning the defendant's prior conviction of possession of narcotics with intent to sell pursuant to § 21a-277 (a). Specifically, the defendant

---

[13] We reject the state's claim that the defendant, through his counsel, waived his right to a separate trial on the part B information and his status as a repeat offender. It is well established in constitutional jurisprudence that the defendant himself must personally enter a plea. See *Boykin* v. *Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

argues that the court improperly admitted prior misconduct evidence pursuant to Connecticut Code of Evidence § 4-5 (b)[14] because the evidence was not relevant or material, and, even if relevant, its prejudicial effect greatly outweighed its probative value. We are unpersuaded.

The following additional facts and procedural history are relevant to the defendant's claim. Prior to the commencement of the state's case, trial counsel submitted two motions in limine seeking to preclude evidence of the defendant's prior conviction for possession of narcotics with intent to sell. The state replied that it would not introduce the conviction unless the defendant testified but that it did intend to introduce evidence of prior misconduct pursuant to § 4-5 (b). The court decided to reserve decision on this issue.

On the first day of trial, the state called Officer Mark Trohalis. Outside the jury's presence, Trohalis stated that on November 19, 2002, during a narcotics investigation, a car was stopped, and the defendant, a passenger, was found to have a bag of narcotics inside his pants. The bag contained twelve smaller bags with a yellow, rock like substance. The smaller bags inside were knotted in the same manner as other narcotics Trohalis had seen over the years. As a result, the defendant was arrested and subsequently convicted for possession of narcotics with the intent to sell. The court then ruled that the evidence of prior misconduct was admissible to show absence of mistake, to corroborate Curtis' testimony and for the purposes of establishing the essential elements of intent and possession.

---

[14] Connecticut Code of Evidence § 4-5 (b) provides: "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony."

Before the start of evidence the next day, the court informed the jury that it would hear evidence regarding events from November, 2002.[15] The court cautioned that the evidence was admitted for limited purposes, i.e., it could be used only to assess an absence of mistake as to the defendant's awareness or knowledge of the drugs—elements of the crimes regarding possession and intent to sell—and to corroborate Curtis' testimony. The court then polled the jury as to whether its members understood that this evidence was to be used only for a limited purpose and no other, and the jurors replied, "Yes, sir."

Admitting this evidence over the defendant's objections, the court noted in the absence of the jury that this evidence of prior misconduct was admissible under § 4-5 (b) of the Connecticut Code of Evidence, that the evidence would be allowed for limited purposes only, that the court would repeat this limitation in its final instructions and that it would be guided by any proposed instructions from the defendant. Thereafter, in the jury's presence, Trohalis testified that on November 19, 2002, he stopped a car in which the defendant was a passenger. He stated that while the car was being searched, the defendant indicated that he possessed

---

[15] The court instructed the jury as follows: "Ladies and gentlemen, you're going to hear testimony concerning a date and certain events in November, 2002—or certain activities in 2002. I expect—I instruct you that the testimony is admissible and relevant for a limited purpose only. It can only be used by you on the issues of intent as it relates to an intent to sell, absence of mistake or accident as it relates to whether or not the defendant was aware of any drugs recovered, knowledge as it relates to whether or not the defendant had any knowledge of drugs recovered, an element of the crime as it relates to whether or not the defendant possessed any drugs recovered and, or possessed them with the intent to sell them, and finally to corroborate prosecution testimony as it relates to the testimony of Susan Curtis, who had testified yesterday. So, I'm instructing you to make sure that you understand that the evidence that you're about to hear from these witnesses is to be used only as evidence for the above purpose and for no other. Is that understood?

narcotics and retrieved a bag he had hidden in his pants. The bag held many smaller bags containing a yellow, rock like substance, which tested positive for cocaine. On cross-examination, Trohalis noted that the drugs were not packaged in an unusual fashion but were quite typical for cocaine in that area.

Danbury police Officer John Krupinsky also testified that he was involved in the motor vehicle stop with Trohalis. Krupinsky confirmed that during this event, the defendant reached down his pants and handed the bag over to Trohalis. Catherine Rose of the state toxicology laboratory testified that the substance consisted of freebase or crack cocaine. On cross-examination, Rose indicated that there was only crack cocaine and not the powder or salt form of cocaine.

In its final instructions, the court charged the jury as follows: "I'm going to talk about evidence that I admitted for a limited purpose. You recall that I have ruled that some testimony evidence has been allowed for a limited purpose. Any testimony or evidence which I identified as being limited to a purpose you will consider only as it relates to the limits for which it was allowed. And you shall not consider such testimony and evidence in finding any other facts as to any other issue. . . .

"Ladies and gentlemen, you heard testimony concerning [the defendant] and a date, November of 2002. I instruct you that that testimony is admissible and relevant for a limited purpose. It can only be used by you on the issues of intent as it relates to an intent to sell, absence of mistake or accident as it relates to whether or not the defendant was aware of any drugs recovered, knowledge as it relates to whether or not the defendant had knowledge of any drugs recovered, an element of the crime as it relates to whether or not the defendant possessed any drugs and, or possessed them with the intent to sell, and finally to corroborate prosecution

testimony as it relates to the testimony of Susan Curtis. . . . So, I'm instructing you to make sure that you understand that the evidence that you heard is to be used only as evidence for the above purposes and no other."

At the outset, we note that "[a] trial court's ruling on the admissibility of evidence is entitled to great deference and will be overturned only if a clear abuse of the court's discretion is shown and the defendant shows that the ruling caused substantial prejudice or injustice. An appellate tribunal is required to make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Thomas*, 96 Conn. App. 578, 583–84, 901 A.2d 76, cert. denied, 280 Conn. 912, 908 A.2d 542 (2006). Thus, the standard we employ to review this claim is whether the court abused its discretion in allowing this evidence of prior misconduct.

"[A]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . We have recognized exceptions to this general rule, however. Evidence of prior misconduct may be admissible . . . for other purposes, such as to prove knowledge, intent, motive, and common scheme or design . . . . Accordingly, [our Supreme Court has] established a two-pronged test for determining the admissibility of prior misconduct evidence. Such evidence is admissible if: (1) it is relevant and material to at least one of the circumstances encompassed by the exceptions; and (2) its probative value outweighs its prejudicial effect." (Citations omitted; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 390, 844 A.2d 810 (2004).

Under the first prong of our analysis, we conclude that the court did not abuse its discretion in ruling that the evidence was relevant and material. "Relevant

evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . All that is required is that the evidence tend to support a relevant fact even to a slight degree . . . ." (Internal quotation marks omitted.) *State* v. *Erhardt*, 90 Conn. App. 853, 861, 879 A.2d 561, cert. denied, 276 Conn. 906, 884 A.2d 1028 (2005). The first prong of the test requires the court to determine if at least one exception applies to the evidence sought to be admitted. *State* v. *James G.*, supra, 268 Conn. 390. Here, the court determined that the evidence was probative of the defendant's intent.[16]

Here, the state was required to prove that the defendant possessed narcotics with the intent to sell them. Accordingly, the state properly offered Trohalis' and Krupinsky's testimony to aid the jury with the issue of intent. "As we stated in *State* v. *Amaral*, 179 Conn. 239, 245, 425 A.2d 1293 (1979), evidence that the defendant had been a seller of narcotics in the past is relevant to the nature of his possession of the drug at the time of the alleged offense. Because intent is almost always proved, if at all, by circumstantial evidence, prior misconduct evidence, where available, is often relied upon." (Internal quotation marks omitted.) *State* v. *Baldwin*, 224 Conn. 347, 355, 618 A.2d 513 (1993).

The defendant also argues that there was more than ample evidence from which the jury could infer intent, and, therefore, there was no need to permit the prejudicial testimony of Trohalis and Krupinsky. "Intent, or any other essential element of a crime, is always at

---

[16] Although the court also found the evidence to be probative of absence of mistake, the element of possession and to corroborate Curtis' testimony, we note that prior misconduct evidence is admissible as long as it is "relevant and material to at least one of the circumstances encompassed by the exceptions . . . ." *State* v. *James G.*, supra, 268 Conn. 390. Thus, because we conclude that the evidence was relevant as to intent, we confine our discussion accordingly.

issue unless directly and explicitly admitted before the trier of fact." Id., 356. Because intent was not admitted in this case and was an element of the offense the state was required to prove, the court reasonably could have determined that the evidence had significant probative value to prove intent. See id.

Having determined that the court properly found the challenged evidence to be relevant, we next turn to whether the court abused its discretion in determining that the probative value of the evidence outweighed its prejudicial effect. "We recognize that this balancing process is an inherently difficult one, and will reverse the trial court's decision only when it is manifest that an abuse of discretion or an injustice has occurred." (Internal quotation marks omitted.) *State* v. *Mooney*, 218 Conn. 85, 127, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

"[E]vidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . The court bears the primary responsibility for conducting the balancing test to determine whether the probative value outweighs the prejudicial impact, and its conclusion will be disturbed only for a manifest abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *DeJesus*, 91 Conn. App. 47, 64, 880 A.2d 910 (2005), cert. granted on other grounds, 279 Conn. 912, 903 A.2d 658 (2006).

The defendant contends that the prior misconduct evidence unnecessarily aroused the jurors' emotions

and hostility against him, and consequently, its prejudicial effect greatly outweighed its probative value. We disagree and conclude that the court exercised sound discretion in determining that the prior misconduct evidence was not unduly prejudicial and that its probative value outweighed any prejudicial effect on the defendant.

The defendant also argues that the similarity of the presently charged crimes to the prior misconduct renders evidence of his prior acts more prejudicial than probative because the jury was likely to view the misconduct testimony relating to the prior drug conviction as propensity evidence. We do not agree. "[T]he mere fact that [prior] misconduct [evidence] and the charged crime are similar does not make the [prior] misconduct evidence overly prejudicial." *State* v. *McFarlane*, 88 Conn. App. 161, 165, 868 A.2d 130, cert. denied, 273 Conn. 931, 873 A.2d 999 (2005). In fact, this court has stated that sufficient similarities of the prior offenses to the charged offenses makes them highly probative. *State* v. *Madore*, 45 Conn. App. 512, 522–23, 696 A.2d 1293 (1997).

Contrary to the defendant's assertion, we do not believe that the prior misconduct evidence was inflammatory. Because the jury already had heard, and was in the process of hearing, evidence of the defendant's possession and intent to sell narcotics, the prior misconduct evidence was not singularly shocking. See *State* v. *Cooper*, 227 Conn. 417, 427, 630 A.2d 1043 (1993) (where evidence similar to uncharged misconduct permeated trial, court found it difficult to believe uncharged misconduct evidence "could have had a tendency to shock or influence the jury or to color the proceedings so as to deprive the defendant of a fair trial"); see also *State* v. *Fernandez*, 76 Conn. App. 183, 189–90, 818 A.2d 877 (evidence that defendant sold

drugs several times in past not type of evidence that would improperly arouse emotions of jury), cert. denied, 264 Conn. 901, 823 A.2d 1220 (2003).

Finally, as noted, the court minimized the potential prejudice to the defendant of the admitted prior misconduct evidence by polling the jury, giving the jury detailed limiting instructions as to the role the evidence was to play in its deliberations immediately after Trohalis' and Krupinsky's testimony, and the court repeated its admonition to the jury in its final instructions. "Proper limiting instructions often mitigate the prejudicial impact of evidence of prior misconduct." (Internal quotation marks omitted.) *State* v. *Orellana*, 89 Conn. App. 71, 89, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005). Furthermore, a jury is presumed to have followed a court's limiting instructions, which serves to lessen any prejudice resulting from the admission of such evidence. See *State* v. *James G.*, supra, 268 Conn. 397–98; see also *State* v. *Anderson*, 86 Conn. App. 854, 870, 864 A.2d 35 (jury presumed to follow court's instructions absent clear evidence to contrary), cert. denied, 273 Conn. 924, 871 A.2d 1031 (2005).

Accordingly, we find no fault with the court's conclusions that the probative value of the evidence outweighed any prejudice to the defendant. The care with which the court weighed the evidence and devised measures for reducing its prejudicial effect weighs against a finding of abuse of discretion. See *State* v. *Erhardt*, supra, 90 Conn. App. 862. Thus, we conclude that the court did not abuse its discretion in admitting the evidence of prior misconduct.

The judgment is affirmed as it relates to the defendant's convictions under counts two, three and four and reversed as to part B of the information. The matter is remanded for a determination under part B of the

information and thereafter for a new sentencing hearing.

In this opinion DiPENTIMA, J., concurred.

BERDON, J., concurring in part and dissenting in part. I agree with part III of the majority opinion with respect to the conviction and sentence of the defendant, Kenneth Myers, as a repeat offender, in that to charge a person as a repeat offender, the procedure set forth in the rules of practice must be followed.

I disagree with parts I and II of the majority opinion with respect to the conviction of the defendant pursuant to General Statutes § 21a-278a (b). Under the circumstances of this case, there was insufficient evidence to establish that the defendant possessed narcotics with the intent to sell or dispense them within the prohibited zone, that is, within 1500 feet of the Henry Abbott Technical School in Danbury.

The arresting police officer, Isaiah Pitts of the Danbury police department, had cause to stop the defendant's vehicle in a shopping plaza, which was outside of the school zone. Instead, he chose to follow the defendant's vehicle until it got within 1500 feet of the school, which was the basis for the charge that the defendant possessed drugs with the intent to sell or dispense within 1500 feet of a school in violation of § 21a-278a (b).[1] Upon being stopped, the defendant gave

---

[1] I disagree with the majority when it states in footnote 1 that "there is neither a claim by the defendant nor any evidence in the record to suggest that Pitts chased or caused the defendant's vehicle to travel onto Padanaram Road in a southerly direction."

I agree that Pitts did not chase the defendant. Pitts, however, did follow the defendant until he got within 1500 feet of the school, notwithstanding that he had the same cause to stop him when he first observed the defendant in the North Street Shopping Plaza, as the majority opinion concedes. It is therefore a reasonable conclusion that Pitts deliberately followed the defendant until he got within 1500 feet of a school.

a package of drugs to his passenger, Susan Curtis, and instructed her to hide them.

A reading of the entire statute leads to the conclusion that it does not cover one who merely passes through the prohibited zone as the defendant did but, rather, that the defendant specifically must have intended to sell or dispense the drugs at a location that happens to be within the prohibited zone. *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995). The plain language of the statute provides for that intent as follows: "To constitute a violation of this subsection, an act of transporting or possessing a controlled substance *shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . .*" (Emphasis added.) General Statutes § 21a-278a (b); see *State* v. *Denby*, supra, 482.

On the basis of the plain language of § 21a-278a (b), our Supreme Court has concluded that "the state is required to prove that the defendant intended to sell or dispense those drugs in his or her possession at a specific location, which location happens to be within [1500][2] feet of an elementary or secondary school." *State* v. *Denby*, supra, 235 Conn. 483. Although the defendant is not required to know that such location is within a school zone, he or she actually must intend to sell or dispense at a location that is within the zone. Id.

In the present case, there was no such intent. The defendant was merely passing through the prohibited zone. This intent is a required element; otherwise it "would encourage the police to chase drug suspects through school zones, or to delay arrests of suspected drug suspects until a school zone violation has

---

[2] General Statutes § 21a-278a (b) was amended in 1992 to increase the scope of the prohibited zone from 1000 feet to 1500 feet. See Public Acts 1992, No. 92-82.

occurred." *United States* v. *Alston*, 832 F. Sup. 1, 7 (D.D.C. 1993), aff'd without opinion, 72 F.3d 920 (D.C. 1995); see also *United States* v. *Liranzo*, 729 F. Sup. 1012, 1014 (S.D.N.Y. 1990). Such delay by the police officer is precisely what occurred in this case.

The majority opinion recounts, at length, evidence of the defendant's intent to sell narcotics. This includes evidence that the packaging and quantity of the narcotics found was consistent with an intent to sell and evidence of the defendant's prior conviction for selling narcotics. This evidence, though indicative of the defendant's intent to sell narcotics at some time or place, is not relevant to the defendant's intent to sell within the school zone. Intent to sell, without evidence of intent to sell at a location within a school zone, is not sufficient to find the defendant guilty under § 21a-278a (b). See *State* v. *Denby*, supra, 235 Conn. 483. The majority opinion's reliance on this evidence obfuscates the key issue in this case, which is whether the defendant's acts evidenced intent to sell or dispense narcotics within the school zone.

Although intent can be inferred from conduct; see *State* v. *Downey*, 45 Conn. App. 148, 154, 694 A.2d 1367, cert. denied, 242 Conn. 909, 697 A.2d 367 (1997); here, the defendant's words and conduct do not provide sufficient grounds for the inference that he intended to "sell" narcotics at that location, despite his act of handing the narcotics to Curtis.

Even under the very broad definition of sale,[3] the defendant's act here, handing a package of narcotics

---

[3] "Sale" is defined broadly by statute as, "any form of delivery which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee . . . ." General Statutes § 21a-240 (50); see *State* v. *Wassil*, 233 Conn. 174, 194, 658 A.2d 548 (1995). "Delivery" is "the actual, constructive or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship . . . ." General Statutes § 21a-240 (11).

to his passenger with instructions that she "hold it," was not a sufficient act from which the jury could infer that he intended to "sell" or "dispense" at that moment. There is no evidence that the defendant would have stopped his vehicle within the school zone without orders from the police to do so. Once the defendant was stopped, the only reasonable inference that could be drawn from his act of handing the narcotics to Curtis was that he was attempting to conceal them from the police. Furthermore, the only reason this act occurred at this location was that the police officer followed the defendant into the zone and deliberately stopped him there.

Moreover, the United States Court of Appeals for the Second Circuit has held that the transfer of narcotics between two simultaneous purchasers is not "delivery" because such transfers are not links in the chain of distribution. *United States* v. *Swiderski*, 548 F.2d 445, 451 (2d Cir. 1977). Similarly, here, though the defendant and his passenger were not simultaneous purchasers, the defendant did not "deliver" the narcotics to Curtis because there is no indication that the transfer was furthering the distribution of the narcotics within the school zone.

This case, therefore, implicates the concerns expressed by other courts that police may, on a whim, use the pervasive and unavoidable presence of drug free school zones within our cities to significantly increase the mandatory penalty. See *United States* v. *Alston*, supra, 832 F. Sup. 7. Indeed, the scope of the prohibited zones is even broader in Connecticut. They also include "a public housing project or a licensed child day care center, as defined in section 19a-77, that is defined as a child day care center by a sign posted in a conspicuous place. . . . For the purposes of this subsection, 'public housing project' means dwelling

accommodations operated as a state or federally subsidized multifamily housing project by a housing authority, nonprofit corporation or municipal developer, as defined in section 8-39, pursuant to chapter 128 or by the Connecticut Housing Authority pursuant to chapter 129." General Statutes § 21a-278a (b). These zones can, and do, encompass entire cities. See *United States* v. *Watson*, 788 F. Sup. 22, 25 n.5 (D.D.C. 1992) ("likelihood that most drug transactions in the District of Columbia necessarily occur near a school or playground simply because in this urban area there are schools or playgrounds almost everywhere"); *United States* v. *White*, United States District Court for the District of Connecticut, Docket No. N-90-40 (D. Conn. December 10, 1990) ("almost all of New Haven [Connecticut] falls within the protected 1000 foot school zone").[4] Under the majority opinion's interpretation of § 21a-278a (b), at the whim of a police officer's timing of the arrest, he or she could add three years imprisonment to the mandatory penalty. I am unwilling to hand over to the police the power of imposing penalties.[5]

Accordingly, I dissent with respect to parts I and II of the majority opinion.[6]

---

[4] The defendants in those cases were charged under 21 U.S.C. § 860, which is similar to General Statutes § 21a-278a (b). Connecticut, however, defines the zone around a protected property even more broadly. Compare 21 U.S.C. § 860 (a) ("within one thousand feet") and General Statutes § 21a-278a (b) ("within one thousand five hundred feet").

[5] Likewise, I would find error in the charge to the jury.

[6] I, therefore, would not reach the issue of prior misconduct evidence raised in part IV of the majority opinion.