STATE OF CONNECTICUT *v.* TROY
SHAMAR THOMAS
(AC 26151)

Flynn, C. J., and Rogers and Hennessy, Js.

Argued May 22—officially released July 18, 2006

*Robert J. McKay,* for the appellant (defendant).

*Lisa A. Riggione,* senior assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Terri L. Sonnemann,* assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Troy Shamar Thomas, appeals from the judgment of conviction, rendered following a jury trial, of possession of narcotics with the intent to sell in violation of General Statutes § 21a-278 (b), possession of a controlled substance with the intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b), possession of narcotics in violation of General Statutes § 21a-279 (a) and possession of narcotics within 1500 feet of a school in violation of General Statutes § 21a-279 (d). The trial court sentenced the defendant to a total effective sentence of eleven years imprisonment. On appeal, the defendant claims that the court improperly admitted (1) evidence of uncharged misconduct and (2) certain expert testimony. We are not persuaded.

The following facts, which the jury reasonably could have found, are relevant to our resolution of this appeal. On July 23, 2003, at approximately 7:30 p.m., after

receiving numerous calls concerning illegal drug activity outside 57 Belden Street in Hartford, members of the Hartford police department's vice and narcotics unit engaged in a surveillance of that location. The building at 57 Belden Street is within 1500 feet of Thomas J. Quirk Middle School, a public secondary school at which the defendant was not a student. Among those conducting the surveillance were Officer Anthony Martinez and Detective Deborah Scates, who watched the front of the 57 Belden Street building from a parked, unmarked car approximately 100 yards away. Martinez and Scates observed three men, later identified as Craig Counsel, Julian Bernie and the defendant standing outside that location. Counsel, Bernie and the defendant were all approached, approximately ten times during the course of the surveillance, by what appeared to be drug-dependent individuals. Each individual who approached the three men would engage in a brief conversation with them outside the building and then would be escorted into the building by one of the three men, while the other two men remained outside acting as lookouts. Counsel, Bernie and the defendant would take turns taking the individuals into the building or acting as lookouts. The defendant entered the building twice with suspected drug-dependent individuals.

On the basis of their training and experience, Martinez and Scates believed that the three men were using the hallway of 57 Belden Street to conduct narcotic sales and, therefore, sent a radio transmission to the other unit members to "move in." Upon approaching the defendant, Martinez saw him throw a plastic bag containing a white rock like substance underneath a motor vehicle. A chemist with the state toxicology laboratory later determined the substance thrown to be 25.1 grams of cocaine.[1]

---

[1] When seized, the total weight of the substance was approximately forty-two grams.

At the time of arrest, the defendant had $25 on his person, Counsel had $170 on his person and Bernie had $352 on his person. Additionally, Bernie dropped bags of narcotics when he stood up. Martinez and Scates testified that some drug dealers have one person hold the drugs and another hold the cash to minimize profit loss if they are stopped by police.

After a trial to the jury, the defendant was convicted of possession of narcotics with the intent to sell, possession of a controlled substance with the intent to sell within 1500 feet of a school, possession of narcotics and possession of narcotics within 1500 feet of a school. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion by improperly admitting evidence of uncharged misconduct concerning his prior involvement with illegal drugs. Specifically, the defendant argues that the evidence was unduly prejudicial and that the only purpose for its admission was to arouse the emotions of the jury. We do not agree.

The following additional facts are relevant to our resolution of this claim. The state filed a motion to introduce prior misconduct, and a hearing was held on that motion on September 15, 2004. The court granted the state's motion, allowing the admission of two incidents of uncharged misconduct.

Detective Alfred Henderson, with the major crimes division of the Hartford police department, testified concerning a February, 1999 incident. He testified that on February 19, 1999, at approximately 6:30 p.m., while he was checking the hallways of 57 Belden Street for illegal drug activity, he observed the defendant standing in the hallway staring at the palm of his hand. In his

hand, the defendant was holding a plastic bag containing a white rock like substance, which Henderson immediately identified as crack cocaine and which later tested positive for cocaine. Henderson asked the defendant to give him the plastic bag, and the defendant complied. The defendant also had $45 on his person. The defendant and Henderson engaged in a conversation and the defendant responded that "he was selling to stay alive." The defendant told Henderson that the crack cocaine was worth approximately $200, and Henderson testified that the amount of crack cocaine in the plastic bag was more than an amount typically carried for personal use.

Detective Nathaniel Ortiz, with the Hartford police department's vice and narcotics division, testified concerning an incident that occurred on December 17, 2003. In response to numerous complaints from the property owner and residents, Ortiz and fellow officers executed a search and seizure warrant for 59 Belden Street, identifying Counsel as one of the targets and the defendant as one of the associates. After announcing their presence and receiving no answer, the police forced entry into two apartments simultaneously. The defendant and Counsel, who were in one of the subject apartments, left that apartment via the fire escape and attempted to enter the other apartment, but were detained by the police. The defendant had a couple of "8-balls," which were one-eighth ounce chunks of crack cocaine, and $197 on his person. Ortiz testified that an 8-ball is not for personal use and that street level drug dealers usually will carry at least one 8-ball and break off chunks to sell individually.

During preliminary instructions to the jury, the court stated that some evidence might be admitted for a limited purpose only. After Ortiz testified, the court instructed the jury that his testimony was admitted for a limited purpose. The court instructed that his testimony

was not being admitted to prove the bad character of the defendant, but could be considered only for the following limited purposes: (1) to show or establish the alleged intent of the defendant to sell a controlled substance; namely, cocaine, which is an element of one of the crimes charged, (2) to show or establish that the defendant knowingly possessed a narcotic substance; namely, cocaine, which is an element that the state must prove with respect to three of the crimes with which he is charged in this particular case and (3) to show or establish that the defendant's presence at the scene of the alleged crimes was not merely coincidental, but rather that he was intentionally engaging in a system of criminal activity at that location. The court gave a similar limiting instruction at the conclusion of Henderson's testimony. At the close of evidence, the court again instructed the jury that the testimony of Ortiz and Henderson was not admitted to prove the defendant's bad character or propensity to commit criminal acts, but was admitted for three limited purposes, which the court reiterated.

"[A]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . We have recognized exceptions to this general rule, however. Evidence of prior misconduct may be admissible . . . for other purposes, such as to prove knowledge, intent, motive, and common scheme or design . . . . Accordingly, [our Supreme Court has] established a two-pronged test for determining the admissibility of prior misconduct evidence. Such evidence is admissible if: (1) it is relevant and material to at least one of the circumstances encompassed by the exceptions; and (2) its probative value outweighs its prejudicial effect." (Citations omitted; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 390, 844 A.2d 810 (2004). "A trial court's ruling on the admissibility of evidence is entitled to

great deference and will be overturned only if a clear abuse of the court's discretion is shown and the defendant shows that the ruling caused substantial prejudice or injustice. An appellate tribunal is required to make every reasonable presumption in favor of upholding the trial court's ruling." *State* v. *Lewis*, 245 Conn. 779, 804 n.23, 717 A.2d 1140 (1998).

We conclude that the court did not abuse its discretion in granting the state's motion to introduce uncharged misconduct evidence of the February, 1999 and December, 2003 incidents. The defendant argues that the only purpose for the admission of the uncharged misconduct was to arouse the emotions of the jury improperly. We disagree.

The court properly admitted the uncharged misconduct evidence as being probative of the defendant's intent, knowledge and engagement in a system of criminal activity. When ruling on the admission of the uncharged misconduct evidence, the court stated: "[T]he evidence is very probative of what the state needs to prove in this case, and I'm also considering the fact that the state has to rely heavily on circumstantial evidence to prove two of the elements that are involved—the elements of intent [and] knowledge are involved in the first two counts and the element of knowledge, knowingly possessing the narcotic in counts three and four, and I think that it's strongly probative evidence of the state's claims in this particular case and I think it's probative value overrules any prejudice."

The February, 1999 incident, in which the defendant possessed cocaine in amounts exceeding that for personal use and stated that he was "selling to stay alive," and the December, 2003 incident, in which he also possessed cocaine in amounts exceeding that for personal use, were probative of the defendant's knowledge that

the plastic bag he threw under the automobile contained crack cocaine and that he intended to sell that substance. Counts one and two, possession of narcotics with the intent to sell in violation of § 21a-278 (b) and possession of a controlled substance with the intent to sell within 1500 feet of a school in violation of § 21a-278a (b), require that the state prove that the defendant intended to sell cocaine. As our Supreme Court stated in *State* v. *Baldwin*, 224 Conn. 347, 355, 618 A.2d 513 (1993), "evidence that the defendant had been a seller of narcotics in the past is relevant to the nature of his possession of the drug at the time of the alleged offense. Because intent is almost always proved, if at all, by circumstantial evidence, prior misconduct evidence, where available, is often relied upon." (Internal quotation marks omitted.) With respect to counts three and four, possession of narcotics in violation of § 21a-279 (a) and possession of narcotics within 1500 feet of a school in violation of § 21a-279 (d), "[t]o prove either actual or constructive possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence, and exercised dominion and control over it." (Internal quotation marks omitted.) *State* v. *Hernandez*, 254 Conn. 659, 669, 759 A.2d 79 (2000).

In addition to being relevant to intent and knowledge, the evidence of uncharged misconduct was also relevant to proving a system of criminal activity. In both the February, 1999 and December, 2003 incidents, the defendant possessed cocaine and cash at the same location as the charged crimes, 57 Belden Street or the adjoining building at 59 Belden Street. In the latter incident, the defendant and Counsel were both targets of a search incident to a drug investigation. A factor that makes this evidence of uncharged misconduct more probative is that it is similar both in kind and location

to the evidence before the jury in this trial. See *State v. Baldwin*, supra, 224 Conn. 355.

The court determined that the uncharged misconduct evidence was more probative than prejudicial. The court conducted a hearing outside the presence of the jury and, after considering the parties' arguments, determined that the probative value of the evidence outweighed any prejudice. Furthermore, the court lessened the potential prejudice to the defendant by repeatedly giving the jury limiting instructions as to the use of this evidence. The court carefully considered the evidence and excluded, with respect to the December, 2003 incident, evidence of weapons found in Counsel's bedroom. The care with which the court weighed the evidence and devised measures for reducing its prejudicial effect militates against a finding of abuse of discretion. *State v. Erhardt*, 90 Conn. App. 853, 862, 879 A.2d 561, cert. denied, 276 Conn. 906, 884 A.2d 1028 (2005). We conclude that the court did not abuse its discretion in admitting the evidence of uncharged misconduct.

II

The defendant next claims that the court improperly permitted Martinez to testify concerning the ultimate issue of the defendant's intent, thereby depriving the defendant of his right to a fair trial.[2] The defendant did

[2] The testimony that the defendant claims was improper was given by Martinez, an expert in the field of illegal narcotics activities. The colloquy at issue is as follows:

"[Assistant State's Attorney]: Based on your training and experience as an expert in the field of illegal narcotics activities, what did you believe was happening?

"[Martinez]: Well, based on my training and experience, I believe that there was narcotics being sold—I take that back. Based on my training and experience, what I would believe was happening was they were using the hallway to make narcotics sales inside the building.

"[Assistant State's Attorney]: And based on your expert opinion, why would they use the hallway?

"[Martinez]: As cover from the police officers. To keep the citizens, residents, prying eyes away from their conduct."

not object to Martinez' opinion at trial and now seeks review of his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[3] or the plain error doctrine. See Practice Book § 60-5. *Golding* instructs that this court is free to respond to the defendant's claim "by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra. We conclude that the defendant's claim fails to satisfy *Golding*'s second prong, which requires that the unpreserved claim be of constitutional magnitude. Id., 239.

A challenge to a court's ruling admitting expert testimony is evidentiary in nature; *State* v. *Vilalastra*, 207 Conn. 35, 45, 540 A.2d 42 (1988); and our Supreme Court has declined to attach constitutional significance to the erroneous admission of expert testimony concerning an ultimate fact. *State* v. *Campbell*, 225 Conn. 650, 654, 626 A.2d 287 (1993) (claim that court improperly permitted police narcotics expert to testify that in his opinion, defendant possessed crack cocaine with intent to sell, rather than intent to use them personally, evidentiary in nature); see also *State* v. *Walton*, 227 Conn. 32, 60, 630 A.2d 990 (1993) (claim that court improperly permitted police testimony as to ultimate question of whether narcotics were being readied for distribution, evidentiary, rather than constitutional, in dimension); *State* v. *Smith*, 209 Conn. 423, 425–26, 551 A.2d 742 (1988) (claim that court improperly permitted police expert

---

[3] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

drug investigator to testify that in his opinion defendant possessed narcotics with intent to sell, evidentiary in nature).

We are not persuaded by the defendant's attempt to transform an evidentiary issue into one of constitutional magnitude. "Regardless of how the defendant has framed the issue, he cannot clothe an ordinary evidentiary issue in constitutional garb to obtain appellate review." (Internal quotation marks omitted.) *State* v. *Warren*, 83 Conn. App. 446, 452, 850 A.2d 1086, cert. denied, 271 Conn. 907, 859 A.2d 567 (2004). Having recognized the defendant's claim as nothing more than one of evidentiary error, we may quickly dispose of it. "Our Supreme Court has stated that once identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed. . . . We previously have held that *Golding* does not apply to evidentiary claims, which, standing alone, do not rise to the level of constitutional magnitude that is required by *Golding*'s second prong." (Citation omitted; internal quotation marks omitted.) *State* v. *Jackson*, 86 Conn. App. 803, 811–12, 862 A.2d 880, cert. denied, 273 Conn. 909, 870 A.2d 1081 (2005).

The defendant also seeks review as plain error under Practice Book § 60-5. "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 240, 881 A.2d 160 (2005). The claim here does not present the type of extraordinary situation that warrants plain error review. Accordingly, we decline to review his claim.

The judgment is affirmed.

In this opinion the other judges concurred.