STATE OF CONNECTICUT *v.* DAVE ANTHONY HALL
(AC 25916)

Bishop, DiPentima and Foti, Js.

Argued October 12—officially released December 12, 2006

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (defendant).

*Melissa Streeto Brechlin*, assistant state's attorney, with whom, on the brief, was *Matthew C. Gedansky*, state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Dave Anthony Hall, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a), possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and operating a motor vehicle while his license was under suspension in violation of General Statutes § 14-215 (a). On appeal, the defendant claims that the court improperly admitted evidence of prior uncharged misconduct. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On the night of March 12, 2003, Karen Neff, a known crack cocaine user, went to the Rockville Tavern in the Rockville section of Vernon. Neff, who used crack at least three times a week, bought crack almost exclusively from the defendant and had purchased it from him numerous times in the past. On the night of March 12, after leaving the Rockville Tavern, Neff went to a friend's house and, as she had done numerous times in the past, called the defendant's cellular telephone to purchase crack from him. She made arrangements to

meet the defendant in Rockville in one hour because the defendant would be driving from Bloomfield. Neff then walked up the street to the house of her friend, Tammy Gilbert, another crack addict who lived across the street from the Rockville Tavern and who also had purchased crack from the defendant. From Gilbert's house, Neff again called the defendant to inquire when he would be arriving in Rockville. The defendant said that he would be there shortly and that he would call back to arrange a location for the transaction. Shortly thereafter, the defendant called Gilbert's house and, as he had done in the past, told Neff to start walking to the parking lot of the Springville Mills apartment complex, which was just up the street from Gilbert's house. Gloria Leonard, another crack addict who had done business with the defendant in the past, was present at Gilbert's house and accompanied Neff to the Springville Mills parking lot because she also had made arrangements to purchase crack from the defendant that evening.

When Neff and Leonard reached the Springville Mills parking lot, the defendant already was waiting there in his Dodge minivan, the same vehicle that he had used during prior drug transactions. Neff entered the parking lot while Leonard waited on the sidewalk. Consistent with their past drug transactions, Neff got into the passenger side of the van, handed the defendant two twenty dollar bills, and he handed her two crack rocks.

Richard Harrison, a security guard at Springville Mills, was sitting in his security vehicle on West Main Street when he noticed Neff and Leonard walking toward him. He watched the women closely because he knew that both were drug users, that they did not live in Springville Mills and that the area of town was a high drug trafficking area. He then drove toward them. Leonard, who saw Harrison approaching, emerged from the parking lot and stood on the sidewalk while Neff

walked into the parking lot to meet the defendant. Harrison drove his vehicle next to Leonard and asked where Neff had gone. Leonard pointed in the direction of the next parking lot, and Harrison drove into that lot, where he saw Neff and the defendant in a Dodge minivan. Suspecting that they were conducting a drug transaction, he drove his vehicle in front of the defendant's in order to prevent him from fleeing, got out of his car and began to walk toward the defendant's van. The defendant suddenly drove out of the parking lot and sped away. Harrison got back into his vehicle and began chasing the defendant's van along West Main Street and onto Grand Avenue.

On Grand Avenue, Harrison flagged down Officer John Trolland of the Vernon police department, who was patrolling the area in his police cruiser. Harrison told Trolland what had just occurred and indicated that he wanted the occupants of the van arrested for trespassing. Trolland began to follow the defendant's van. He did not activate his lights or siren. Harrison followed Trolland in his security vehicle.

The defendant continued driving at a high rate of speed until he reached the Santini Villa apartment complex on Vernon Avenue. Trolland followed the defendant into the complex and activated his lights in order to signal the defendant to stop his van. The defendant, however, did not immediately stop. Instead, both Trolland and Harrison saw an object thrown from the passenger side window of the van. It appeared to be a clear plastic bag containing a white substance. The object landed in a grassy area partially covered by snow. On the basis of his training and experience, Trolland suspected that the object contained narcotics. After the object had been thrown out of the window, the van eventually came to a stop about 100 yards from the place where the object had landed.

Trolland called for backup, emerged from his cruiser and approached the driver's side of the van. He recognized Neff from previous arrests as a known drug user in the Rockville area. He also recognized the defendant. Trolland knew that they were in a high crime area and that neither the defendant nor Neff resided at Santini Villa. The defendant was nervous and fidgety, and his answers to Trolland's questions were vague and evasive. Trolland observed two twenty dollar bills on the driver's side floor of the van.

When Trolland's backup arrived, another officer stood at the van while Trolland walked to the location where he had seen the object thrown from the van's window. There, he found a clear plastic bag containing twenty-nine chunks of a hard, white, chalky substance, which he believed to be crack cocaine. A field test and subsequent laboratory tests confirmed that the substance was, in fact, 8.08 grams of crack cocaine.

Trolland approached the passenger's side of the van and asked Neff what she had thrown from the window. Neff denied that she had thrown anything from the window despite Trolland's indication that he had seen her do it. When she continued to deny it, he asked her to step out of the van and placed her under arrest. Neff denied that the crack was hers and stated, "I'll tell you. It was his," referring to the defendant. Trolland also placed the defendant under arrest.

During the defendant's booking at the police station, despite the defendant's representation that he was unemployed, the police found $438 on his person. The police also found on his person a razor with a white chalky residue on it, which proved to be cocaine.

In advance of trial, the defendant filed a motion in limine seeking to preclude the introduction of evidence of prior convictions and uncharged misconduct. Prior to Neff's testimony, the state represented its desire to

elicit testimony from Neff and three other witnesses, Leonard, Tammy Gilbert and Lisa Gilbert, that the defendant had sold crack to each of them on numerous occasions, and that each had observed the defendant sell crack to the others. The state asserted that this prior misconduct evidence was admissible under Connecticut Code of Evidence § 4-5 (b)[1] and pursuant to pertinent case law because it was probative of intent, identity and knowledge of the substance possessed by the defendant and because it was corroborative of crucial prosecution testimony. The state argued further that this misconduct evidence was probative with respect to the charges against the defendant and that it was not unduly prejudicial to him. The state argued that Neff's testimony regarding the defendant's prior misconduct was relevant and material because she was a participant in the drug transaction for which the defendant was on trial; that the testimony of Leonard and Tammy Gilbert was relevant and material because they were witnesses to, and involved in, the incident in question; and that Lisa Gilbert's testimony was relevant and material because she was friendly with the other witnesses who had purchased crack from the defendant on numerous occasions.

The defendant countered that the prejudicial effect of the prior misconduct evidence outweighed its probative value. The defendant's objection to the admissibility of the proffered testimony was not based on its relevance or materiality. In fact, the defendant conceded that evidence of his prior drug sales was probative of identity, intent, knowledge of the character of the substance and corroborative of crucial prosecution evidence. The

[1] Connecticut Code of Evidence § 4-5 (b) provides: "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony."

defendant also acknowledged that the court had discretion to permit testimony regarding his prior drug sales in order to prove the elements of the crimes, including intent, identity and knowledge. The defendant's sole objection was that he would suffer undue prejudice due to the cumulative nature of the prior misconduct evidence from four separate witnesses. The court allowed the testimony of prior misconduct from Neff, Leonard and Tammy Gilbert, and excluded the proffer regarding Lisa Gilbert.

The jury found the defendant guilty of possession of narcotics in violation of § 21a-279 (a), possession of narcotics with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b), sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b) and operating a motor vehicle while his license was under suspension in violation of § 14-215 (a). The court sentenced the defendant to nine years incarceration, followed by five years of special parole. This appeal followed.

"[A]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . We have recognized exceptions to this general rule, however. Evidence of prior misconduct may be admissible . . . for other purposes, such as to prove knowledge, intent, motive, and common scheme or design. . . . Accordingly, [our Supreme Court has] established a two-pronged test for determining the admissibility of prior misconduct evidence. Such evidence is admissible if: (1) it is relevant and material to at least one of the circumstances encompassed by the exceptions; and (2) its probative value outweighs its prejudicial effect." (Citations omitted; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 390, 844 A.2d 810 (2004). "A trial court's ruling on the admissibility of evidence is entitled to great deference and will be overturned only if a clear

abuse of the court's discretion is shown and the defendant shows that the ruling caused substantial prejudice or injustice. An appellate tribunal is required to make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Thomas*, 96 Conn. App. 578, 583–84, 901 A.2d 76, cert. denied, 280 Conn. 912, 908 A.2d 542 (2006). Thus, the standard we employ to review this claim is whether the court abused its discretion in allowing this evidence of prior misconduct.

Because the defendant concedes that the evidence of misconduct was relevant and material, we address only whether the evidence was unduly prejudicial to him. The defendant contends that the prior misconduct evidence unnecessarily aroused the jurors' emotions and hostility against him by portraying him as a crack dealer in a case in which he was accused of possessing and selling crack. We are not persuaded.

"[E]vidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . The court bears the primary responsibility for conducting the balancing test to determine whether the probative value outweighs the prejudicial impact, and its conclusion will be disturbed only for a manifest abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *DeJesus*, 91 Conn. App. 47, 64, 880 A.2d 910 (2005), cert. granted on other grounds, 279 Conn. 912, 903 A.2d 658 (2006).

Here, the court exercised sound discretion in determining that the prior misconduct evidence was

not unduly prejudicial and that the probative value of that evidence outweighed any prejudicial effect. The court ruled that because Neff was a participant in the incident, her testimony regarding the defendant's prior drug sales was admissible, as it was relevant and material to proving intent, identity, knowledge of the substance and corroborative of crucial prosecution evidence. The court also ruled that because Leonard and Tammy Gilbert were witnesses to the events in question, their testimony was also admissible to prove identity, intent, knowledge of the substance and was corroborative of prosecution evidence. The court noted that, although prior misconduct evidence is inherently prejudicial to the defendant, here, it was not unduly so, and its probative value outweighed any prejudicial effect. To ensure that Lisa Gilbert's testimony was not merely cumulative of the testimony of Neff, Leonard and Tammy Gilbert, the court reserved its ruling on the admissibility of her testimony regarding prior drug sales until after it had heard the testimony of the other three witnesses. Ultimately, after hearing the testimony of three prior misconduct witnesses, the court ruled that although the other three women were participants in, or witnesses to, the incident at hand, Lisa Gilbert was not, and her testimony would merely be cumulative. The court noted that this would present a danger that the jurors would view her testimony as probative of the defendant's criminal tendencies, rather than solely to prove intent, knowledge or identity, and, therefore, her testimony would be more prejudicial than probative and inadmissible.

The court also lessened the potential prejudice to the defendant of the admitted prior misconduct evidence both by giving the jury limiting instructions as to the use of this evidence prior to the testimony of Neff, Leonard and Tammy Gilbert, and at the close of evidence as well. "Proper limiting instructions often mitigate the prejudicial impact of evidence of prior

misconduct." (Internal quotation marks omitted.) *State* v. *Orellana*, 89 Conn. App. 71, 89, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005). Here, the court adequately instructed the jury as to the role the evidence was to play in its deliberations.

We find no fault with the court's conclusions that the evidence with regard to the defendant's past practices of selling crack had significant probative value because it related to the defendant's knowledge of the character of the substance that he was selling and to his criminal intent and that the probative value outweighed any prejudice to the defendant. The care with which the court weighed the evidence and formulated measures for reducing its prejudicial effect militates against a finding of abuse of discretion. See *State* v. *Erhardt*, 90 Conn. App. 853, 862, 879 A.2d 561, cert. denied, 276 Conn. 906, 884 A.2d 1028 (2005). Thus, we conclude that the court did not abuse its discretion in admitting the evidence of uncharged misconduct.

The judgment is affirmed.

In this opinion the other judges concurred.