TROY S. THOMAS *v.* STATE OF CONNECTICUT
(AC 31313)

Lavine, Bear and West, Js.

Argued April 18—officially released August 2, 2011

*John W. Watson*, for the appellant (petitioner).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Terri L. Sonnemann*, assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Troy S. Thomas, appeals from the judgment of the trial court denying his petition for a new trial.[1] On appeal, the petitioner claims that the trial court improperly (1) granted the motion to strike filed by the respondent, the state of Connecticut, and (2) denied his petition for a new trial. We affirm the judgment of the trial court.

The following procedural history and facts provide an overview of the events that give rise to this appeal. On July 23, 2003, the petitioner was arrested in the vicinity of 57 Belden Street in Hartford. Evidence was presented to a jury, which, on September 22, 2004, found the petitioner guilty of "possession of narcotics with

---

[1] See General Statutes § 52-270 (a) ("Superior Court may grant a new trial of any action . . . for . . . the discovery of new evidence").

the intent to sell in violation of General Statutes § 21a-278 (b), possession of a controlled substance with the intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b), possession of narcotics in violation of General Statutes § 21a-279 (a) and possession of narcotics within 1500 feet of a school in violation of General Statutes § 21a-279 (d)." *State* v. *Thomas*, 96 Conn. App. 578, 579, 901 A.2d 76, cert. denied, 280 Conn. 912, 908 A.2d 542 (2006). The petitioner's conviction was upheld on appeal to this court.[2] Id., 589.

During the course of the trial on the July, 2003 charges, held in September, 2004, two Hartford police detectives, Alfred Henderson and Nathaniel Ortiz (detectives), testified about the petitioner's prior uncharged misconduct concerning his involvement with illegal drugs to prove knowledge and intent.[3] Id., 581–82. In October, 2004, after the jury found the petitioner guilty, but before he was sentenced, the petitioner's trial counsel, Jeremy N. Weingast, learned that Ortiz was under investigation for falsifying information in search warrant affidavits. Weingast filed a motion for a new trial, which the court, *Keller, J.*, denied, indicating that General Statutes § 52-270 was the appropriate means by which to seek a new trial. Judge Keller sentenced the petitioner to eleven years imprisonment. Id., 579.

In October, 2003, the petitioner again was arrested and charged with various drug offenses. Jury selection on those charges commenced in April, 2005, but the panel was never sworn in. The state filed a motion to

[2] On appeal, the petitioner claimed "that [Judge Keller] improperly admitted (1) evidence of uncharged misconduct and (2) certain expert testimony." *State* v. *Thomas*, supra, 96 Conn. App. 579.

[3] The court, *Keller, J.*, gave an appropriate limiting instruction after each of the detectives had testified and included a limiting instruction in its charge to the jury. *State* v. *Thomas*, supra, 96 Conn. App. 582–83.

introduce uncharged misconduct evidence to prove the petitioner's intent to possess and sell drugs.[4] The petitioner filed a motion to suppress, which Judge Keller denied. The petitioner elected to enter a plea of nolo contendere on April 26, 2005, in order to appeal from the denial of his motion to suppress.[5] The court, *D'Addabbo, J.*, sentenced the petitioner to a term of imprisonment concurrent with the sentence he was serving for his conviction of the crimes he committed in July, 2003.

With regard to the detectives who testified as to the petitioner's prior uncharged misconduct in the September, 2004 trial, police department investigations revealed that they were involved in criminal activity themselves. Ortiz had falsified information in a search warrant affidavit and was indicted before the petitioner was sentenced for the July, 2003 crimes. On April 8, 2008, Ortiz pleaded guilty under the *Alford* doctrine[6] to a charge of making a false statement in the second degree. In January, 2006, Henderson also was arrested and charged in a ten count information with larceny in the first degree, forgery in the second degree, fabricating physical evidence and tampering with a witness. On October 26, 2007, he entered a written plea of nolo contendere to one of court of forgery in the second degree and was sentenced on February 4, 2008.

---

[4] Our review of the state's motion to introduce uncharged misconduct evidence reveals that a number of police officers were identified with regard to several instances of uncharged misconduct. Henderson's name is mentioned, but not Ortiz'.

[5] The petitioner appealed from the denial of his motion to suppress. This court affirmed the denial of the motion to suppress. See *State* v. *Thomas*, 98 Conn. App. 542, 909 A.2d 969 (2006), cert. denied, 281 Conn. 910, 916 A.2d 53 (2007). On appeal, the petitioner claimed that the "police violated his constitutional protection against unreasonable search and seizure and that the police lacked probable cause to arrest him without a warrant." Id., 544.

[6] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

In 2007, the petitioner filed a pro se petition for a new trial. Appointed counsel subsequently filed an amended petition on January 22, 2009. In count one, the petitioner sought a new trial pursuant to his conviction after a jury trial on the July, 2003 crimes, and, in count two, a new trial pursuant to his having entered a plea of nolo contendere to one of the October, 2003 crimes with which he had been charged. The respondent filed a motion to strike count two of the petition. The court, *Hon. John F. Mulcahy, Jr.*, judge trial referee, granted the motion to strike. Thereafter, the parties tried the first count of the petition to Judge Mulcahy, who denied the petition for a new trial in a lengthy and thorough memorandum of decision. See *Thomas* v. *State*, 52 Conn. Sup. 69, 24 A.3d 630 (2009). The court granted the petitioner's request for certification to appeal filed pursuant to General Statutes § 54-95 (a).[7] This appeal followed. Additional facts will be set forth as needed.

## I

The petitioner first claims that the court improperly (1) granted the respondent's motion to strike count two of his petition for a new trial and (2) denied his motion to reconsider and replead. We disagree.

## A

The resolution of the petitioner's claim that the court improperly granted the motion to strike count two of his petition turns largely on the distinction between a

---

[7] The question the court certified is "[w]hether in a criminal prosecution where 'other crimes' evidence is used to prove intent and where the entire evidence of 'other crimes' is testified to by witnesses who were later convicted of crimes which would have eliminated their credibility or eliminated their use as witnesses requires a finding that a result would probably be different under part [four] of the *Asherman* test for the granting of [a] petition for [a] new trial where the other three parts have been found met by the trial court." See *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1987).

trial and the presentation of evidence.[8] With regard to the petitioner's conviction of one of the crimes with which he had been charged in the October, 2003 incident, the petitioner pleaded nolo contendere; no evidence was presented regarding those crimes. Consequently, there was no evidentiary record available for the court to compare with what the petitioner claims is newly discovered evidence regarding the criminal conduct of the detectives who testified at the September, 2004 trial. See *Shabazz* v. *State*, 259 Conn. 811, 822, 792 A.2d 797 (2002). The petitioner's claim therefore fails.

Count two of the petitioner's amended petition alleges, in relevant part, that trial on the October, 2003 charges commenced on April 25, 2005. After the petitioner's motion to suppress was denied, he "entered a plea of [n]olo [c]ontendere so that he could take an appeal on the suppression issue." He also alleged that during that trial, Ortiz was under investigation for fabricating evidence in an unrelated case involving drug charges. Ortiz was arrested and pleaded guilty to fabricating evidence in May, 2008.

In January, 2006, the Hartford police department arrested Henderson for criminal activity dating to 2000, in which he took money intended to compensate confidential informants. Henderson pleaded guilty to criminal charges in February, 2008. The petitioner also alleged that at the time the detectives testified in September, 2004, he was aware that the testimony given by Ortiz and Henderson was false, but that he was unable to impeach their testimony because he did not

---

[8] The terms "trial" and "evidence" have distinct meanings. In a criminal case, a trial begins "when a jury is empanelled and sworn"; *Serfass* v. *United States*, 420 U.S. 377, 388, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975); and ends with the rendering of a final judgment, which is sentencing. See *State* v. *Curcio*, 191 Conn. 27, 34, 463 A.2d 566 (1983). Evidence is the manner "in which facts in dispute are found . . . ." Conn. Code Evid. § 1-1 (b).

know of their criminal wrongdoing. The petitioner claimed that, if the jury had not found him guilty of the July, 2003 charges, he would have been in a superior position to bargain and decide whether to go to trial on the October, 2003 charges.[9] The petitioner alleged that the jury's verdict was unjust, but as a result of the guilty verdict, he entered a plea on the October, 2003 charges. He further alleged that he discovered the detectives' criminal activities subsequent to the jury's verdict and that he could not have discovered the criminal activities sooner.

The petitioner alleged that there was evidence that Henderson was falsifying information for a substantial period of time both prior to and subsequent to the petitioner's convictions. He alleged that he would not have pleaded nolo contendere to one of the October, 2003 charges but for his conviction on the July, 2003 charges that were the result of tainted testimony given by Ortiz and Henderson. But see footnote 9 of this opinion. On the basis of newly discovered evidence regarding the detectives' criminal conduct, the petitioner sought a new trial.

The respondent filed a motion to strike count two of the amended petition, claiming that the allegations it contained were legally insufficient and failed to state a claim on which relief could be granted. The respondent also claimed that the prayer for relief as to count two is legally insufficient, and finally, that the petition improperly joins two causes of action that cannot properly be united.[10] The petitioner objected to the motion to strike.

---

[9] This allegation contradicts the petitioner's prior allegation that he pleaded nolo contendere in order to take an appeal from the denial of his motion to suppress.

[10] Although the court struck count two, it concluded that had count two been legally sufficient and relief granted as to count two, the two counts of the petition could have been tried together in the interest of judicial economy, i.e., there was no misjoinder. See *Craft Refrigerating Co.* v. *Quinnipiac Brewing Co.*, 63 Conn. 551, 560, 29 A. 76 (1893).

The court granted the respondent's motion to strike count two of the petition in a memorandum of decision issued March 17, 2009. The court found that the petition failed to allege any newly discovered evidence pertaining to the petitioner's plea conviction, as required by § 52-270. The allegations of count two refer to the police department investigations, arrests and convictions of Ortiz and Henderson, which pertain to the petitioner's jury conviction on the July, 2003 charges. The petition does not allege that either Ortiz or Henderson had a role in the investigation that led to the petitioner's arrest in October, 2003, or testified in relation to the charge brought in connection with that incident. Moreover, count two does not allege that Ortiz or Henderson would have testified at trial had there been a trial on those charges. The court concluded that the newly discovered evidence concerning the detectives' criminal conduct could not have been used to impeach their testimony on the October, 2003 charges. The petition does not allege that either Ortiz or Henderson was in any way involved in the October, 2003 charges or the petitioner's plea of nolo contendere.

The court found that the petitioner sought to create a nexus between the jury trial conviction and the plea conviction on the basis of the concurrent sentences. The court concluded, however, that the circumstance of concurrent sentences did not render count two legally sufficient. Count two addresses a separate and distinct matter from count one and each case was resolved in a different manner. The court noted that to decide the issues raised in the petition, it had to consider the new evidence concerning Ortiz and Henderson in the context of the evidence presented at a trial on the October, 2003 charges and determine whether the new evidence probably would have yielded a different result. See *Shabazz* v. *State*, supra, 259 Conn. 827. In the prosecution of those charges, however, there was no trial. Moreover,

no evidence was presented. The petitioner entered a nolo contendere plea. The court also concluded that the amended petition lacked any specific factual allegations that Ortiz or Henderson were involved, or would have been involved, in the October, 2003 charges. The court ultimately concluded that because the petitioner failed to plead any allegations concerning newly discovered evidence directly related to count two, he failed to state a claim on which relief can be granted.

The court also concluded that the petitioner's prayer for relief is legally insufficient. In its motion to strike, the respondent asserted that the petitioner did not have a trial at which evidence was presented on the charges related to the October, 2003 charges and the petitioner is not entitled to a new trial under § 52-270. Practice Book § 10-39 "allows for a claim for relief to be stricken only if the relief sought could not be legally awarded." *Pamela B.* v. *Ment,* 244 Conn. 296, 325, 709 A.2d 1089 (1998). At oral argument on the motion to strike, the petitioner conceded that to obtain a trial on the charges related to count two, the court first would have to vacate his plea on the basis of its not having been knowingly made. The petitioner also conceded that count two of the petition does not fall under § 52-270 because there was no trial on the October, 2003 charges.[11]

The court noted that when ruling on a petition for a new trial, the court "must always consider the newly discovered evidence in the context of the evidence presented in the original trial." *Shabazz* v. *State,* supra, 259 Conn. 827. The petition does not allege that there was a trial on the October, 2003 charges. The only proceeding in which evidence was presented concerned

---

[11] At the hearing on the motion to strike, the parties stipulated that the petitioner entered his plea of nolo contendere after the jury was selected but before it was sworn and that there was no presentation of evidence.

the petitioner's motion to suppress and the petition does not allege that Ortiz or Henderson testified at the suppression hearing. In view of the fact that there was no trial, and, thus, no evidence was presented, the court concluded that it was unable to make the evidentiary comparison required by *Shabazz*. For this reason, the court concluded the petitioner's prayer for a new trial is legally insufficient.

"The standard of review in an appeal from the granting of a motion to strike is well established. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review . . . is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . [A] motion to strike is essentially a procedural motion that focuses solely on the pleadings. . . . It is, therefore, improper for the court to consider material outside of the pleading that is being challenged by the motion." (Citation omitted; internal quotation marks omitted.) *Dlugokecki* v. *Vieira*, 98 Conn. App. 252, 256, 907 A.2d 1269, cert. denied, 280 Conn. 951, 912 A.2d 483 (2006). "For the purpose of ruling upon a motion to strike, the facts alleged in a complaint, though not the legal conclusions it may contain, are deemed to be admitted. . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citation omitted; internal quotation marks omitted.) *Metcoff* v. *Lebovics*, 123 Conn. App. 512, 516, 2 A.3d 942 (2010).

Section 52-270 (a) provides in relevant part: "The Superior Court may grant a new trial of any action that may come before it, for mispleading, the *discovery of*

*new evidence* or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed . . . ." (Emphasis added.) The statute applies to criminal as well as civil actions. See *Hamlin* v. *State*, 48 Conn. 92, 93–94 (1880) (newly discovered evidence).

On appeal here, the petitioner has argued that "the court focused on allegations about Ortiz and Henderson's direct involvement in a hypothetical trial of the plea case which it deemed should have been made but were lacking." He contends that the court accepted the respondent's position that Ortiz and Henderson had nothing to do with his conviction pursuant to his nolo contendere plea to one of the October, 2003 charges. The petitioner also argues that the court erroneously concluded that there had to be a trial in order for a new trial to be granted. In support of his position, the petitioner notes that § 52-270 does not provide that a petition for a new trial may be granted only where there has been a prior trial. He relies on the language of the statute that permits a court to grant a new trial for mispleading, want of actual notice of the action, want of a reasonable opportunity to appear and defend when a just defense existed. The respondent rebuts the petitioner's argument by pointing out that the petition for a new trial is grounded only in a claim for newly discovered evidence. We agree with the respondent and will address only the ground of newly discovered evidence to resolve the petitioner's claim.[12]

In this instance, the court properly found that there was no prior trial and thus there was no evidence to compare with the newly discovered evidence and thus, no way to gauge the probable effect it would have on

---

[12] "To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *DuBaldo Electric, LLC* v. *Montagno Construction, Inc.*, 119 Conn. App. 423, 443, 988 A.2d 351 (2010).

the outcome of a new trial. Nonetheless, the petitioner contends that, if he were granted a new trial, the outcome would be different because he would not have pleaded nolo contendere had he known of the detectives' criminal conduct, which he would have used to impeach their credibility at trial. But see footnote 9 of this opinion. Although the petitioner acknowledges that a plea may not be withdrawn following sentencing; see Practice Book § 39-26; he relies on a habeas corpus case alleging ineffective assistance of trial counsel for the proposition that a plea may be set aside after sentencing pursuant to Practice Book § 39-27 (4) (ineffective assistance of counsel). See *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 571–72, 941 A.2d 248 (2008). Although the petitioner is correct that a plea may be set aside when a criminal defendant has been denied the effective assistance of counsel, the test applied in such a petition for a writ of habeas corpus is that established in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (counsel's performance fell below acceptable standards and petitioner prejudiced by deficient performance). To be granted a new trial on the basis of newly discovered evidence, the petitioner must meet, not the *Strickland* test, but the *Asherman* test. See *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1987).

We conclude that because the petitioner pleaded nolo contendere to one of the charges arising from his arrest in October, 2003, there was no evidentiary record with which the court could have compared the petitioner's alleged newly discovered evidence, as there was no trial. The court, therefore, properly granted the respondent's motion to strike count two of the petition.[13]

---

[13] In his reply brief, the petitioner contends that in ruling on the motion to strike, the court did not focus on the proper question. The petitioner contends that the question the court should have considered is, "if he had not been convicted [by the jury] based at least in part on tainted evidence from corrupt police officers, [the] petitioner would have declined to enter a plea and accept the sentence he did." Again, that question does not change

B

The petitioner also claims that the court improperly denied his motion to reconsider, depriving him of a meaningful opportunity to replead. We do not agree.

The following facts are relevant to the petitioner's claim. The respondent filed a motion to strike count two of the amended petition on December 12, 2008, and the petitioner filed an objection thereto on February 23, 2009. The court heard oral argument on the motion to strike on February 25, 2009, and issued a memorandum of decision on March 17, 2009. On March 18, 2009, the petitioner filed a supplemental memorandum of law in support of his objection to the motion to strike, which did not reach the court prior to its issuing its memorandum of decision. The petitioner then filed a motion for reconsideration, contending that the court mistakenly concluded that count two contained no allegation that either Ortiz or Henderson "had any role in the investigation that led to the petitioner's arrest and prosecution in that case." The court granted the motion for reargument. At the time of reargument, the petitioner placed into evidence a copy of the respondent's motion to introduce uncharged misconduct evidence at a trial on the October, 2003 charges, which indicated that Henderson may testify about the petitioner's prior uncharged misconduct. The petitioner's counsel offered an oral motion that count two of the amended petition be amended to allege that "Officer Henderson was involved" in both cases. Following reargument, the court affirmed its decision to strike count two of the amended petition, stating that, although Henderson was

the fact that the petitioner pleaded nolo contendere to one of the October, 2003 charges and that there was no trial. Consequently, there was no evidentiary record to which the court could apply the test in *Asherman* v. *State*, supra, 202 Conn. 434. Moreover, the petitioner alleged that he pleaded nolo contendere to appeal from the denial of his motion to suppress evidence. See footnotes 5 and 9 of this opinion.

a proposed witness, that fact did not change the fact that there was no trial and that Henderson was not a proposed witness with regard to the respondent's case-in-chief on the October, 2003 charges.[14]

## II

As to the court's denying his petition for a new trial on the July, 2003 charges, the petitioner claims that the court (1) applied the wrong standard when deciding the fourth prong of the *Asherman* test and (2) if this court disagrees with his first claim, the court abused its discretion under the fourth prong of *Asherman*. We conclude that the court did not apply the wrong standard and did not abuse its discretion when applying the fourth prong of *Asherman*. The petitioner's claims therefore fail.

Count one of the petitioner's amended petition for a new trial concerns the conviction after a jury trial on the July, 2003 charges. The facts reasonably found by a jury were set out in the petitioner's direct appeal to this court. "On July 23, 2003, at approximately 7:30 p.m., after receiving numerous calls concerning illegal drug activity outside 57 Belden Street in Harford, members of the Hartford police department's vice and narcotics unit engaged in a surveillance of that location. The building at 57 Belden Street is within 1500 feet of Thomas J. Quirk Middle School, a public secondary school at which the [petitioner] was not a student. Among those conducting surveillance were Officer

---

[14] The court never specifically ruled on the petitioner's oral motion to amend count two of his amended petition. On the basis of the fact that there was no trial on the October, 2003 charges, by affirming its ruling on the motion to strike count two, the court necessarily denied the petitioner's motion to amend count two. The court did not abuse its discretion by denying the motion to amend. Although our rules of practice permit repleading after the granting of a motion to strike; see Practice Book § 10-44; amending count two to allege that "Henderson may have testified" would not change the fact that there was no trial on the October, 2003 charges.

Anthony Martinez and Detective Deborah Scates, who watched the front of the 57 Belden Street building from a parked, unmarked car approximately 100 yards away. Martinez and Scates observed three men, later identified as Craig Counsel, Julian Bernie and the [petitioner] standing outside that location. Counsel, Bernie and the [petitioner] were all approached, approximately ten times during the course of the surveillance, by what appeared to be drug-dependent individuals. Each individual who approached the three men would engage in a brief conversation with them outside the building and then would be escorted into the building by one of the three men, while the other two men remained outside acting as lookouts. Counsel, Bernie and the [petitioner] would take turns taking the individuals into the building or acting as lookouts. The [petitioner] entered the building twice with suspected drug-dependent individuals.

"On the basis of their training and experience, Martinez and Scates believed that the three men were using the hallway of 57 Belden Street to conduct narcotic sales and, therefore, sent a radio transmission to the other unit members to move in. Upon approaching the [petitioner], Martinez saw him throw a plastic bag containing a white rock like substance underneath a motor vehicle. A chemist with the state toxicology laboratory later determined the substance thrown to be 25.1 grams of cocaine.

"At the time of arrest, the [petitioner] had $25 on his person, Counsel had $170 on his person and Bernie had $352 on his person. Additionally, Bernie dropped bags of narcotics when he stood up. Martinez and Scates testified that some drug dealers have one person hold the drugs and another hold the cash to minimize profit loss if they are stopped by police." (Internal quotation marks omitted.) *State* v. *Thomas*, supra, 96 Conn. App. 579–81.

Prior to trial, the state filed a motion to introduce evidence of the petitioner's prior uncharged misconduct. After a hearing on the motion, Judge Keller granted the state's motion. Id., 581. Henderson and Ortiz testified as to the uncharged misconduct during the September, 2004 trial.

Henderson, who was with the major crimes division of the Hartford police department, testified about a February, 1999 incident. "[O]n February 19, 1999, at approximately 6:30 p.m., while he was checking the hallways of 57 Belden Street for illegal drug activity, he observed the [petitioner] standing in the hallway staring at the palm of his hand. In his hand, the [petitioner] was holding a plastic bag containing a white rock like substance, which Henderson immediately identified as crack cocaine and which later tested positive for cocaine. Henderson asked the [petitioner] to give him the plastic bag, and the [petitioner] complied. The [petitioner] also had $45 on his person. The [petitioner] and Henderson engaged in a conversation and the [petitioner] responded that 'he was selling to stay alive.' The [petitioner] told Henderson that the crack cocaine was worth approximately $200, and Henderson testified that the amount of crack cocaine in the plastic bag was more than an amount typically carried for personal use. . . .

"Ortiz, with the Hartford police department's vice and narcotics division, testified concerning an incident that occurred on December 17, 2003. In response to numerous complaints from the property owner and residents, Ortiz and fellow officers executed a search and seizure warrant for 59 Belden Street, identifying Counsel as one of the targets and the [petitioner] as one of the associates. After announcing their presence and receiving no answer, the police forced entry into two apartments simultaneously. The [petitioner] and Counsel, who were in one of the subject apartments, left

that apartment via the fire escape and attempted to enter the other apartment, but were detained by the police. The [petitioner] had a couple of '8-balls,' which were one-eighth ounce chunks of crack cocaine, and $197 on his person. Ortiz testified that an 8-ball is not for personal use and that street level drug dealers usually will carry at least one 8-ball and break off chunks to sell individually." Id., 581–82.

As previously stated, Henderson and Ortiz later were arrested, entered pleas and were sentenced to prison. In count one of his amended petition, the petitioner alleged that the "testimony of . . . Ortiz and Henderson was critical to the State's case against [the] petitioner on drug charges and related to drug evidence. Both of the [witness/officers'] criminal involvement involved drug evidence fabrication and manipulating confidential informant funds as well as manipulating confidential informants in drug related cases."

Following a hearing, Judge Mulcahy applied the *Asherman* test to the evidence presented.[15] The test for determining whether a new trial should be granted for newly discovered evidence was set forth in *Asherman* v. *State*, supra, 202 Conn. 434. "The petitioner must demonstrate, by a preponderance of the evidence, that: (1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new trial." Id. "[A] court's decision on the petition should be guided by the more general principle that a new trial will be warranted on the basis of newly discovered evidence only where an injustice was done and whether it is probable that on a new trial a different result would be reached. . . . [I]t is solely within the discretion of

---

[15] See *Thomas* v. *State*, supra, 52 Conn. Sup. 105.

the trial court to determine, upon examination of both the newly discovered evidence and that previously produced at trial, whether the petitioner has established substantial grounds for a new trial." (Citations omitted; internal quotation marks omitted.) *Shabazz* v. *State*, supra, 259 Conn. 821–22. "The [petitioner] *must persuade the court* that the new evidence he submits will probably, not merely possibly, result in a different verdict at a new trial . . . . It is not sufficient for him to bring in new evidence from which a jury *could* find him not guilty—it *must be evidence which persuades the judge that a jury would find him not guilty.*" (Emphasis in original; internal quotation marks omitted.) Id., 823.

"New trials are not granted upon newly discovered evidence which discredits a witness unless the evidence is so vital to the issues and so strong and convincing that a new trial would probably produce a different result. . . . The basic question which the trial court has to decide is whether upon all the evidence an injustice had been done. In deciding this question, the court has the exercise of sound legal discretion, and its action cannot be disturbed unless this discretion has been abused." (Citations omitted.) *Turner* v. *Scanlon*, 146 Conn. 149, 163, 148 A.2d 334 (1959). "One reason why new trials will not be granted for newly-discovered evidence affecting character, is that the jury may believe the witness notwithstanding the impeachment; while an independent fact tending to discredit a witness might have much more weight with the jury." *Husted* v. *Mead*, 58 Conn. 55, 63, 19 A. 233 (1889). Judge Mulcahy concluded that the first three prongs of the *Asherman* test had been satisfied, but the fourth had not.

A

The petitioner claims that the court applied the wrong standard to the fourth prong of the *Asherman* test, i.e.,

"it is likely to produce a different result in a new trial." *Asherman* v. *State,* supra, 202 Conn. 434. We disagree.

Ordinarily, appellate courts "review a trial court's decision with respect to a petition for a new trial for an abuse of discretion." *Shabazz* v. *State,* supra, 259 Conn. 820. When, however, the claim questions whether the court applied the appropriate standard, a question of law is raised to which the plenary standard applies. *Adams* v. *State,* 259 Conn. 831, 839, 792 A.2d 809 (2002).

The petitioner bases his claim on the following words used by the court. "It is my view that the aforesaid evidence, in its entirety, if accepted by a new jury, along with the reasonable inferences that could be drawn therefrom, would permit such jury, under the required standard of proof (beyond a reasonable doubt), to find intent to sell, knowing possession, and noncoincidental presence, without any additional proof of 'other crimes.'" The petitioner claims those words represent the court's ultimate conclusion and demonstrate that the court applied an analysis akin to a claim of sufficiency of the evidence. We disagree with the petitioner's claim as the language at issue is taken out of context and does not represent the court's ultimate conclusion.[16] When ruling on appellate claims, we read a trial court's memorandum of decision in its entirety. See, e.g., *Moasser* v. *Becker,* 121 Conn. App. 593, 595, 996 A.2d 1200 (2010); *In re G.S.,* 117 Conn. App. 710, 719, 980 A.2d 935, cert. denied, 294 Conn. 919, 984 A.2d 67 (2009).

---

[16] The court's ultimate conclusion states: "Applying the strict *Asherman* standard in conformity with existing case law, and considering the newly discovered evidence in the context of the evidence presented at the original trial, it is my best judgment that the petitioner has not established, by a preponderance of the evidence, that the newly discovered evidence (impeachment of 'other crimes' witnesses) is likely to produce (i.e., probably would produce) a different result in a new trial. Accordingly, the petition is denied."

On the basis of our plenary review of the court's memorandum of decision, we conclude that, not only was the court fully aware of the standard to be applied pursuant to the fourth prong of the *Asherman* test, but also, that it properly applied the standard in this case. The court set out the standard as follows: "*Shabazz* v. *State*, supra, [259 Conn. 827–28] and *Adams* v. *State*, supra, [259 Conn. 838] . . . indicate that likely to produce a different result rises to the higher level of probably *would* [not could] yield a different result. . . . A petitioner must persuade the court that the new trial evidence . . . will *probably*, not merely possibly, result in a different verdict at a new trial . . . . It is not sufficient . . . to bring in new evidence from which a jury could find him not guilty . . . it must be evidence which persuades the judge that a jury *would* find him not guilty." (Citations omitted; emphasis in original; internal quotation marks omitted.) "It is axiomatic that the court, in reaching its determination on a petition for a new trial, must always consider the newly discovered evidence in the context of the evidence presented at the original trial. *Adams* v. *State*, supra, [838]; *Shabazz* v. *State*, supra, [827] . . . ." (Citation omitted.)

After reviewing the evidence presented at the September, 2004 trial on the July, 2003 charges and considering the position of both parties,[17] the court found that the newly discovered evidence concerning Ortiz and Henderson met the first three prongs of the *Asherman* test. The court, however, agreed with the state that on the basis of the testimony and exhibits presented at the September, 2004 trial, notwithstanding the absence of testimony from Ortiz and Henderson, the jury would find the petitioner guilty. The court then stated, including the language to which the petitioner takes exception: "It is my view that the aforesaid evidence,[18] in

[17] The petitioner and the respondent agreed that at a new trial neither Ortiz nor Henderson would testify about prior uncharged misconduct given their impeachability.

[18] See *Thomas* v. *State*, supra, 52 Conn. Sup. 116.

its entirety, if accepted by a new jury, along with the reasonable inferences that could be drawn therefrom, would permit such jury, under the required standard of proof (beyond a reasonable doubt), to find intent to sell, knowing possession, and noncoincidental presence, without any additional proof of 'other crimes.' Additionally, while acknowledging that the [s]tate's witnesses were thoroughly cross-examined, and accepting the defense testimony for present purposes, I am unable to conclude that the evidence presented by the [s]tate at the trial was controverted to such a degree (if, at all) that on a new trial, without 'other crimes' evidence, it is *probable* the result *would* be different.

"Additionally, considering the newly discovered evidence in the context of an unlikely scenario in which Ortiz and Henderson would testify at a new trial, it remains my view that although the result *possibly could* be different, the new impeachment evidence does not warrant a finding, established by a fair preponderance, that the result *probably would* be different. On a retrial, Ortiz and Henderson, in the unlikely event they were called, would testify, presumably in the same manner, as to the petitioner's other crimes; the newly discovered evidence would be used by the defense to impeach the credibility of their testimony. If, despite the impeachment, the jury believed all or part of the 'other crimes' testimony (seemingly an unlikely eventuality), the other crimes evidence could be weighed by the jury, affording to it whatever weight, if any, the jury saw fit, with respect to intent, knowledge, and noncoincidental presence." (Emphasis in original.)

The totality of the court's analysis and reasoning demonstrates to us that it did not apply the wrong standard to the fourth prong of the *Asherman* test. The petitioner's claim therefore fails.

## B

The petitioner's second claim is that the court abused its discretion by denying his petition for a new trial on the July, 2003 charges. We disagree.

We have reviewed thoroughly the memorandum of decision in which the court concluded that the petition should not be granted. Our examination of the record on appeal, and the briefs and arguments of the parties, persuades us that the court did not abuse its discretion in denying count one of the petition for a new trial. The court's memorandum of decision fully addresses the arguments raised in the present appeal, and we therefore adopt the well reasoned decision as a statement of the facts and the applicable law on those issues. See *Thomas* v. *State*, supra, 52 Conn. Sup. 69. Repeating the discussion in the memorandum of decision would serve no useful purpose. See *Morrissey* v. *Yale University*, 268 Conn. 426, 428–29, 844 A.2d 853 (2004); *Stebbins* v. *Doncasters, Inc.*, 263 Conn. 231, 234–35, 819 A.2d 287 (2003).

Although we share the petitioner's concern regarding the integrity of the judicial system given the testimony of detectives whose own reprehensible conduct resulted in subsequent criminal convictions, we cannot conclude that the trial manifests an injustice that would cause the public to lose faith in our system of justice.[19]

---

[19] The petitioner asks this court to exercise its supervisory powers to reverse his convictions. "Appellate courts possess an inherent supervisory authority over the administration of justice. . . . The standards that [are] set under this supervisory authority are not satisfied by observance of those minimal historic safeguards for securing trial by reason which are summarized as due process of law . . . . Rather, the standards are flexible and are to be determined in the interests of justice. . . . [O]ur supervisory authority [however] is not a form of free-floating justice, untethered to legal principle. . . . [T]he integrity of the juridical system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . [O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *State* v. *Mukhtaar*, 253 Conn. 280, 290 n.11, 750 A.2d 1059 (2000).

At the time the petitioner was sentenced by Judge Keller, he addressed the court, stating: "I admit that I sold drugs, I did. And I admit that day that they raided—when they came to Belden Street, the drugs were mine . . . . I let a friend of mine go to jail for some drugs that he didn't have nothing to do with . . . Bernie, that day we got arrested in July, that was all my drugs . . . ." In light of the full record in this case, for all of the reasons stated, we conclude that no injustice has occurred.

The judgment is affirmed.

In this opinion the other judges concurred.